## PULLIS et al., *Appellants,* v. ROBISON.

73 201
76a 596
77a 517

73 201
e155 185
L155 186
e155 187

73 201
159 625
o159 626

1.  **Insurance for Benefit of Married Woman:** HUSBAND'S INSOLVENCY: CONSTRUCTION OF STATUTE. Section 15 of the married woman's act, (Wag. Stat., p. 936,) provides that a married woman may cause to be issued for her sole use a policy of insurance on the life of her husband, and in case she survives him, the insurance money shall be payable to her free from the claims of the representatives of her husband or any of his creditors; but such exemption shall not apply when the amount of premiums annually paid shall exceed $300. *Held,* that it is the purpose of this act to allow a hus-

band in embarrassed or even in insolvent circumstances to secure to his wife the benefit of an insurance on his life free from the claims of creditors when the annual premiums do not exceed $300, but not when they exceed that amount. *Held*, also, that it was not the purpose to apply this restriction to a husband in solvent circumstances or to curtail his right to apply as much of his means as he may choose annually to the payment of premiums on his life for his wife's benefit.

2. ——: —— : DISTRIBUTION OF INSURANCE MONEY, AS AFFECTED BY HUSBAND'S INSOLVENCY. Applying these principles to a case in which the annual premiums exceeded $300 and part were paid by the husband while solvent and part after he became insolvent; *Held*, that the proceeds of the policies should be distributed between the widow and the creditors of the deceased, in the proportion that the premiums paid by him when solvent bear to those paid after his insolvency.

3- **Equity**: RACE OF DILIGENCE. As between creditors seeking to have a common fund appropriated to the payment of their demands, the one who files his bill first is entitled to a priority.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Cline, Jamison & Day* for appellant Pullis.

1. Even though Robison may have been solvent when the policies were first taken out, and may have so remained for several years, yet, as the annual premiums are the life, essence and consideration of the contract, and as he was insolvent when he made the last annual payment, which money was that of his creditors, and the said payment gave the right of recovery against the insurance companies, his creditors are in equity entitled to have the proceeds of said policies applied to the payment of their debts, as the widow is a mere volunteer, and the insurance was procured with the creditors' money to the same extent as though the policies had been first taken out when the last annual premium was paid. The money that was paid in any one year only procured the insurance for that year, and the insurance for each succeeding year was procured by the payment of the premiums for that year. The

payment of the premiums was an annual renewal of the contract—that is, they are contracts from year to year in consideration of the payment of the annual premiums.

2. The proper construction of the statute is, if the husband pays the premium and it exceeds $300 annually, the proceeds of the policy are liable for the debts of the husband; but if the widow with her separate estate, or if a friend or third party pays the premium, then the proceeds of the policy or policies are not subject to the payment of the debts of the husband. The law will not allow the husband to approrpriate more than $300 annually out of his means for insurance for the benefit of his wife, as far as his creditors are concerned. The premiums being over $300 annually, no portion of the policies in this case is free from the claims of creditors. Bliss Life Ins., p. 504, § 322; *Charter Oak Life Ins. Co. v. Brant*, 47 Mo. 425; *Baker v. Young*, 47 Mo. 456.

3. Even if Robison was not embarrassed, still as he died owing debts, and the annual premiums paid by him exceeded $300, the proceeds of said policies are liable for his debts, and any creditor may sue for the same.

4. The creditor who first files his bill obtains a priority. *George v. Williamson*, 26 Mo. 193; *U. S. Bank v. Burke*, 4 Blackf. 141; *Hills v. Sherwood*, 48 Cal. 393.

*Rudolph Schulenburg* for appellants Schulenburg & Boeckeler.

1. The court ought to have subjected to the claims of the creditors, not only the amount of the premiums, but so much of the total insurance money as is represented by the total premiums appropriated by Robison in fraud of his creditors. Bliss Life Ins., (2 Ed.) p. 353; *Landrum v. Knowles*, 22 N. J. Eq. 594.

2. The court ought to have subjected the whole insurance money to the claims of the creditors, although Robison was solvent until 1875 or 1876. (1) It was the

premiums paid while he was insolvent which alone made the companies liable to pay the policies. (2) The insurance being procured by premiums out of the funds of Robison, the contract, in each case, was an executory contract on his part, and since it was supported, as between him and his wife, by consideration of love and affection only, it did not vest any interest whatever in her, as long as it was merely executory, to-wit: up to the time of his death. All the interest in such contract remained in him, subject to his power of disposition over the same; and since such his interest and power of disposition was at the time of his death subject to the claims of his creditors, the interest of his wife, when it became executed and vested on the husband's death, was subject to such creditors' claims also. *Pennington v. Gittings,* 2 Gill & J. 208; *Stone v. Hackett,* 12 Gray 227; *Clark v. Durand,* 12 Wis. 223; *Kerman v. Howard,* 23 Wis. 108; *Landrum v. Knowles,* 22 N. J. Eq. 594; *Lemon v. Phœnix M. L. Ins. Co.,* 38 Conn. 294; *Universal L. Ins. Co. v. Cogbill,* 30 Gratt. 72; *Barry v. Equitable L. Ins. Co.,* 59 N. Y. 587; *Continental L. Ins. Co. v. Palmer,* 42 Conn. 60; *Worthington v. Curtis,* Law Rep., 1st Ch'y Div. 419. This is certainly the law in Missouri. *Charter Oak L. Ins. Co. v. Brant,* 47 Mo. 419; *Gambs v. Covenant M. L. Ins. Co.,* 50 Mo 48; *In re Murrin,* 2 Dill. 120.

3. Pullis was not entitled to a priority. The decisions warranting such a priority have done so partly on the ground that a creditor's bill, which afterwards ripens into a decree, amounts to an equitable lien, and, like judgments, must date from the date of filing, and partly as a reward to the creditor most diligent. Under the laws of Missouri, judgments rendered at the same term enjoy no preference as between the parties plaintiff; and regarding the question of diligence these appellants beg leave to refer to the affidavit in support of a motion for new trial in the trial court.

*A. W. Slayback* for respondent.

Mrs. Robison is alone entitled to the proceeds of the policies. Wag. Stat., p. 936, § 18; *Loos v. The John Hancock Co.*, 41 Mo. 541; *Myers v. Keystone L. Ins. Co.*, 27 Pa. St. 268; *Chaplin v. Canada*, 8 Conn. 286; *Fellows v. Gilman*, 4 Wend. 414, 419; *Campbell v. New England M. L. Ins. Co.*, 98 Mass. 381; Bliss on Life Ins., 225, 317, 320, 323; *In re Murrin*, 2 Dill. 120, 126.

The policy effected by the husband on his life for the wife's benefit may be considered as a voluntary settlement; but even then, if made when he was solvent—and in the case at bar, the court finds this to be so—the creditors could not claim anything beyond what he paid after he became insolvent. *Estate of Trough*, 8 Phila. 214.

No court has been willing to go to the extent of holding that after several years of lawful and proper payments of the premiums, the one last payment, during a season of questionable solvency, would *retro-act* upon previous valid transactions, and vitiate all the dealings prior thereto. Such a doctrine seems monstrous. 17 Am. Law Reg., (N. S.) 1 to 11 and 73 to 83.

If the creditors had wished insurance on Robison's life, they should have procured it. They cannot take the widow's policies. *Succession of Hearing*, 26 L. Ann. 326. They are her absolute property. *Barron v. Barron*, 24 Vt. 375; *Barry v. M. L. Ins. Co.*, 49 How. Pr. 504; *Swan v. Snow*, 11 Allen 224.

The policies were in force as the wife's property at the time the last payment was made. They were non-forfeitable, and, therefore, the act or intent of the husband at that time could not avoid her title. *McAllister v. N. E. M. L. Ins. Co.*, 101 Mass. 558. The manifest purpose is not only to prevent creditors from reaching the fund by proceedings in law or equity, but to restrain the debtor from revoking in a moment of caprice or embarrassment the trust which he has once created upon a meritorious and

by the statute a sufficient consideration. *Gould v. Emerson,* 99 Mass. 156; *Lemon v. Phœnix M. L. Ins. Co.,* 38 Conn. 294; *Chapin v. Fellows,* 36 Conn. 132. These cases from Massachusetts and Connecticut were decided under statutes substantially the same as our own. They all were intended to create a separate provision for the wife, not subject to the husband's control and free from the clutches of creditors; but even before the statute, a husband or his creditors or representatives, were not entitled to the *choses* in action of the wife, unless reduced by him into possession during her life. *Leakey v. Maupin,* 10 Mo. 368. In regard to these policies such a thing could not be, and it is, therefore, not the husband's, or his creditors' or his representatives' right to enjoin the widow from collecting them. Under our statute a husband is permitted to withdraw funds not exceeding $300 for premiums on life insurance for the benefit of his wife. *In re Yeager,* 8 West. Ins. Rev. 378; *Smith v. Mo. Valley Ins. Co.,* 3 Cent. Law Jour. 386.

The creditors are not entitled to the premiums paid by the deceased during his lifetime, while insolvent. Sess. Acts 1851, p. 296; *Conn. M. L. Ins. Co. v. Burroughs,* 34 Conn. 305; *Burroughs v. State M. L. Ins. Co.,* 97 Mass. 359; *Landrum v. Knowles,* 22 N. J. Eq. 594; *Unity M. L. Asso. v. Dugan,* 118 Mass. 219; *West v. Reid,* 2 Hare 249; *Burridge v. Row,* 1 Young. & C. 183; *Succession of Hearing,* 26 La. Ann. 326; *Stone v. Knickerbocker L. Ins. Co.,* 52 Ala. 592; *Continental Ins. Co. v. Palmer,* 42 Conn. 60; *In re Bear,* 1 Cent. Law Jour. 607; *Gould v. Emerson,* 99 Mass. 154; *Cables v. Prescott,* 67 Me. 582.

NORTON, J.—This is a proceeding in the nature of a creditor's bill, instituted by certain creditors of James P. Robison, deceased, whose claims had been allowed by the probate court against his estate, to subject to the payment of said debts the proceeds of certain policies of insurance taken out on the life of said Robison, and made payable to his wife. The creditors suing are three in number, and

each having brought a separate action, the three suits were consolidated and tried together. Three of the policies, the proceeds of which constitute the subject matter of controversy, were issued by the Mutual Benefit Life Insurance Company, each of them being for $5,000, and dated respectively February 26th, 1867, February 21st, 1868 and May 12th, 1870. The amount of annual premiums was as follows: $283 on the one dated in 1867, $263 on the one dated in 1868, and $289 on the one issued in 1870. The plaintiffs claim and allege in their bill that Robison was in embarrassed circumstances, and at the time the premiums were paid he was insolvent, and that said policies were donated to his wife, and were procured for the purpose of hindering, delaying and defrauding creditors. Defendant, Mrs. Henrietta Robison, to whom said policies were made payable, denies all the allegations of the bill, and asserts her right to the proceeds of the same.

Upon the trial of the issues thus tendered, the court found that said Robison was solvent at the time said policies were taken out, and remained solvent till about the year 1876; that the payment of the two last premiums on two of said policies amounting to $342.05, dated respectively in 1867 and 1868, which payment occurred in 1876, was made by Robison while he was insolvent, and that all payments of premiums anterior to 1876 were made by him when he was solvent. Upon this finding the court decreed that Mrs. Robison was entitled to the proceeds of the policies, less the amount of premiums paid by Robison when insolvent, with the interest thereon, and also decreed that Mr. Pullis, the plaintiff who first brought suit, was entitled to the whole amount of the premium paid in 1876 with its interest. From this judgment plaintiffs appealed to the St. Louis court of appeals, where the judgment was affirmed, and from this judgment they appealed to this court.

The evidence adduced on the trial, we think, was sufficient to justify the trial court in finding the facts above set forth, and we will, therefore accept its finding as cor-

rect, and thus accepting it, the question presented for our determination is, whether, on the facts, the court in its decree properly disposed of the funds in dispute. Plaintiffs insist that error was committed in this respect, and contend that the premiums paid by Robison in 1876, being in excess of the sum of $300, and having been paid while he was insolvent, out of funds which ought to have been appropriated to the payment of his debts, entitles them to so much of the proceeds of the policies as may be necessary to satisfy in full their claims as creditors, even though it should consume it all.

We think it settled that the wife has such an interest in the life of her husband as to make valid an insurance effected on his life for her benefit. This has been so held in the case of *Gambs v. Covenant Mutual Life Ins. Co.*, 50 Mo. 44. We think it also settled that when such a policy issues and expressly designates a person who is to receive the insurance money, such designation is conclusive unless some question arises as to the right of creditors of the person who paid the premiums. "The receipt of the designated person will discharge the company, and such person will be entitled to maintain an action against the company." Bliss Life Ins., § 317. We think it also settled that a husband who is solvent has the right to effect an insurance on his life for the benefit of his wife, and to pay the annual premiums thereon so long as he remains solvent and can do so without prejudice to, or in fraud of, the rights of creditors. *Larkin v. McMullin*, 49 Pa. St. 29. To what extent, if to any extent, the husband can affect the rights of the wife in such a policy, by an assignment or other disposition of it, is a question which does not arise in this case, and we have, therefore, deemed it unnecessary to notice the numerous authorities cited by counsel bearing on that point.

The interest of the wife in a policy of insurance on the life of her husband, effected for her benefit by the husband

1. INSURANCE FOR BENEFIT OF MARRIED WOMAN: husband's insolvency: construction of statute. while in unembarrassed circumstances, and fully able to discharge all his indebtedness, is not affected, as plaintiffs contend it is, by section 15, Wagner's Statutes, 936, if the husband remain solvent during the time the policy is kept alive by his paying the annual premiums. That section provides that a married woman may cause to be issued for her sole use a policy of insurance on the life of her husband, and in case she survives him, that the insurance money shall be payable to her, free from the claims of the representatives of her husband, or of any of his creditors, but such exemption shall not apply when the amount of premiums annually paid shall exceed $300. We do not think this statute can be so interpreted as to curtail or restrict the right of a solvent husband to apply only $300 of his means annually to the payment of premiums on his life policy procured for the benefit of his wife.

It is insisted that this interpretation has been put upon it in the case of *Charter Oak Life Ins. Co. v. Brant*, 47 Mo. 425. We do not think the opinion goes to that extent, and if it did, we would be unwilling to follow it, and thus give it our sanction. In that case the point in judgment was as to the validity of an assignment of a policy on which the annual premium was $343, and which had been taken out on the life of Mrs. Brant's husband payable to her sole and separate use after her husband's death. This policy was assigned by Brant and his wife to secure the payment of a debt which Brant owed one Stagg for borrowed money. The court held the assignment to be valid, because the annual premium being in excess of $300 prescribed by the statute took it from under the operation of the statute. The remark made in the opinion " that the law did not intend that the husband should withdraw any greater amount from his means, to be expended for such a purpose;" if it is understood as referring to a withdrawal of the means of an insolvent husband and the expenditure made thereof by him for such a purpose, (and such we take

14—73

to be its meaning,) is entirely correct. It was certainly not intended, as counsel insist, to assert that if a husband who is perfectly solvent, with no intent to defraud creditors, either prior or subsequent, applies more than $300 annually of his means in the payment of premiums on an insurance of his life to be paid to and for the benefit of the wife, although after such payments are made, sufficient of his property is left to answer the demands of his creditors, that such creditors can subject the insurance money to the payment of their debt, and thus deprive the wife of the benefit intended to be secured to her.

We think it was the purpose of the statute to allow a husband who might be in an embarrassed and even in an insolvent condition to secure to the wife the benefit of an insurance on his life free from the claims of creditors when the annual premium on such policy does not exceed the sum of $300 ; or in other words, that he might annually withdraw for such a purpose that sum without subjecting the amount insured to the payment of creditors. Previous to the enactment of the statute, an insolvent husband could not apply any portion of his means to such a purpose, and deprive creditors of the right of asserting their claims to all the benefits resulting from such application. The object of the statute, in our opinion, was to change this rule to the extent indicated in the act. It follows from the view we have taken that inasmuch as all the premiums paid by Robison, except the sum of $343 paid in February, 1876, were paid while he was solvent, Mrs. Robison is entitled to the benefits resulting therefrom, and that the last payment being in excess of $300, and made while Robison was insolvent, should go to the benefit of plaintiffs.

It is insisted, by counsel, that inasmuch as the payment made in 1876 kept the policies on foot and gave them vitality, the whole amount of the insurance money, or so much thereof as will be sufficient to satisfy their debts, should be so applied. We have not been cited to, nor have we been able to find any authority that goes to that

extent, nor are we acquainted with any equitable principle on which the claim can be founded. How the insurance money, under the facts and circumstances of this case, should be apportioned, presents a question of some difficulty, especially so as the authorities we have been able to examine are conflicting in the rules laid down. The case of *Landrum v. Knowles*, 22 N. J. Eq. 594, goes farther in support of plaintiffs' position than any which has fallen under our observation, and it falls far short of what is contended for by them. In that case the wife insured the life of her husband for the benefit of her children, and after paying the annual premiums for about ten years assigned the policy, in conjunction with her husband, to one of the husband's creditors in payment of the debt. After said assignment the wife ceased to pay the premiums, but they were paid for about nine years by the creditors. Upon the death of the husband the insurance money was claimed by the children on the one hand, and the assignee on the other, and the chancellor decided that the children were entitled to the cash value of the policy at the time it ceased to be kept alive by the mother, and that the residue of the money due on the policy should be paid over to the assignee.

On the other hand, in the case of *Trough's Estate*, 8 Phila. 215, where Trough, having taken out a policy on his life, assigned the same, while solvent, to a trustee for the benefit of his children, and becoming insolvent thereafter, still continued to pay the premiums, in a contest for the insurance money between the children and Trough's creditors, the rule was laid down that the only claim the creditors could sustain would be the amount of the premiums paid by Trough to keep the policy alive after he became insolvent.

The object of such rules being to do exact justice between the contending parties and to distribute the fund

2. ——: ——: according to their rights, it appears to us that
distribution of in-
surance money, as  neither of the above rules accomplishes the
affected by hus-
band's insolvency  object; and inasmuch as the insurance
money in contest in this case was the product of all the pre-
miums paid, we think a just distribution of it would be
obtained by declaring that Mrs. Robison should be decreed
to have so much of the fund as was produced by the pay-
ment of the premiums by her husband when solvent, and
plaintiffs so much as the premiums paid by Robison when
insolvent contributed to produce; that is, that plaintiffs
are entitled to recover the same proportional part of the
whole insurance money that the premiums paid by Robi-
son when insolvent bear to the premiums paid by him
when solvent. Giving effect to this rule in the disposition
of the case, and accepting the fact found by the court that
Robison, after his insolvency, paid $342.05 as being cor-
rectly found, and the further fact, as shown by the record,
that Robison had paid on two of said policies during his
solvency premiums amounting to $4,650, plaintiffs would
be entitled to recover the sum of $686.84, and Mrs. Robi-
son the residue.

As plaintiff Pullis in the race of diligence was the first
to file his bill, asking an appropriation of the fund to the
3. EQUITY: race of.  payment of his demand, he has obtained a
diligence.           priority over the other creditors, and the said
sum of $686.84 should be applied on his debt. *George v.
Williamson*, 26 Mo. 193. The judgment will be reversed
and cause remanded, with directions to the circuit court to
enter up a decree in conformity with this opinion, directing
the receiver in whose hands the fund has been placed, to
pay first the costs of the suit, next the sum of $686.84 to
plaintiff Pullis, and next the residue to defendant, Mrs.
Robison. All the judges concur.