## STERNBERG, Appellant, v. LEVY.

### Division One, February 12, 1901.

1. **Motion for Judgment on Pleadings**: BILL OF EXCEPTIONS. Motions for judgment on the pleadings must be set out in the transcript and bill of exceptions. A mere recital by the clerk in his transcript that they were filed does not make them a part of the record.

2. ———: NATURE OF MOTION. A motion for judgment on the pleadings is not a demurrer. It partakes of the nature of a demurrer, but it is a matter of exception, and can only be made a part of the record by a bill of exceptions.

3. **Motion to Strike Out:** MOTION FOR NEW TRIAL: REVIEW. The action of the trial court in sustaining a motion to strike out a pleading, may be reviewed on appeal, although no motion for a new trial was filed.

4. **Insurance:** INSOLVENT: EXCESS OF $500 PREMIUMS. The statute in reference to the benefit that shall accrue to creditors when the premiums paid in any one year out of the property of the insured exceed $500, means that the creditor is entitled only to the excess over $500 paid as premiums in any one year, with interest thereon, and not to the product of the premiums paid.

5. ———: ———: SISTER AS BENEFICIARY: EXEMPTIONS. A brother, who is the head of a family, composed of himself, his sister and her children, can spend a part of his salary in premiums for life insurance for her benefit, and his creditors can not touch it, if the money so spent by him was exempt from the claims of his creditors. The creditors are entitled only to the excess over his exemptions with interest.

6. ———: ———: ———: EXEMPTIONS: $300 PER YEAR. Where the head of a family spends less than $300 a year for life insurance for the benefit of that family, his creditors have no interest in the proceeds of the policy.

*Transferred from St. Louis Court of Appeals.*

CIRCUIT COURT JUDGMENT AFFIRMED.

*Clopton & Trembley* for appellant.

(1) As against plaintiff, an existing creditor, Joseph Levy had no legal right to pay assessments for the purpose of keeping a beneficiary certificate in force for the benefit of his adult sister. The payments made by him for that purpose after he became insolvent were presumably fraudulent as against plaintiff, an existing creditor. Snyder v. Free, 114 Mo. 360; Insurance Co. v. Sandfelder, 9 Mo. App. 285; Hoffman v. Nolte, 127 Mo. 120. (2) In as much as $290 of the $569 paid by Joseph Levy to keep the certificate in force was

paid after he became insolvent and with money which should have gone to plaintiff as his creditor, plaintiff is entitled under the law and the facts disclosed by the first count of plaintiff's interplea to $\frac{200}{660}$ of the proceeds of the certificate or $2,038.66. Pullis v. Robison, 73 Mo. 201. (3) The second count of plaintiff's interplea sets forth good grounds why such portion of the proceeds of the certificate in question as might otherwise go to Pauline Levy, should be turned over to plaintiff. Eyermann v. Krieckhaus, 7 Mo. App. 455; Strauss v. Ayers, 34 Mo. App. 248; Epstein v. Clothing Co., 67 Mo. App. 221. (4) The special bill of exceptions filed covers only the action of the court in striking out a part of plaintiff's interplea. No motion for new trial, or in arrest, was filed by plaintiff after Pauline Levy's motion for decree on the pleadings was sustained. This court, however, will review the action of the trial court in rendering a decree for Pauline Levy because errors, if any were committed by the trial court in so doing, arise on the record and such motions were not necessary. Funkhouser v. Mallen, 62 Mo. 555; Bagbee v. Emberson, 79 Mo. 139; Swaggard v. Hancock, 25 Mo. App. 596; Baner v. Barnett, 46 Mo. App. 654.

*W. C. & J. C. Jones* and *Giles Filley Jones* for respondent.

(1) This court can not consider the alleged error of the trial court in striking out part of the interplea of appellant. Bevin v. Powell, 11 Mo. App. 216; Hubbard v. Misenberry, 32 Mo. App. 459; Baleson v. Clark, 37 Mo. 31; State v. Gee, 79 Mo. 313; In re Gardner, 41 Mo. App. 589; Mockler v. Skellett, 36 Mo. App. 174; Swaggard v. Hancock, 25 Mo. App. 604. (2) The certificate in question was effected without fraud and valid, when taken out, and must remain so as

long as the assessments are paid in full.   Pullis v. Robison, 5 Mo. App. 448.   (3) The interpleader is not entitled to recover assessments paid by deceased while insolvent.   Bank v. Hume, 128 U. S. 195; Ins. Co. v. Burroughs, 34 Conn. 305; Burroughs v. Ins. Co., 97 Mass. 359; Unity v. Dugan, 118 Mass. 219; Ashby v. Costin, 21 Q. B. 401; Bacon on Ben. Soc., 312.   (4) Interpleader can not recover at all, for the Western Commercial Travelers Association, one of the original defendants herein, is a fraternal beneficial society, organized under Revised Statutes 1879, section 972, and the funds accumulated by such societies are limited to certain classes of beneficiaries, among which persons in the position of interpleader are not included.   Knights of Honor v. Nairn, 60 Mich. 44; Legion of Honor v. Perry, 140 Mass. 580; Daniels v. Pratt, 143 Mass. 216; Duval v. Goodson, 79 Ken. 224; Aid Ass'n v. Gonser, 43 Ohio St. 1; State v. Ass'n, 29 Ohio St. 399; Wagner v. Society, 70 Mo. App. 161; Ben. Soc. v. Bunch, 109 Mo. 560; Bacon Ben. Soc. (2 Ed.), sec. 312; Hysinger v. Sup. Lodge, 42 Mo. App. 627; Keener v. G. L., 38 Mo. App. 533; Fenn v. Lewis, 10 Mo. App. 478.   (5) Interpleader can not recover in this case for the further reason that under no circumstances could the funds payable upon the death of the member have been made payable to his estate, and thus have become liable for his debts.   Keener v. Grand Lodge, 38 Mo. App. 543; Unity v. Dugan, 118 Mass. 219; Fenn v. Lewis, 10 Mo. App. 481; Daniels v. Pratt. 143 Mass. 216.

MARSHALL, J.—This is an interpleader between the plaintiff, as a judgment creditor of Joseph Levy, and the defendant, as the sister of Joseph Levy, for $2,500, benefits payable by the Western Commercial Travelers Association, upon the death of Joseph Levy, to Pauline Levy, his sister.   There

was a judgment in favor of Pauline Levy in the St. Louis Circuit Court. Plaintiff appealed to the St. Louis Court of Appeals, where the judgment of the circuit court was reversed and the cause remanded to the circuit court with directions to enter a judgment for the plaintiff for the amount of his claim. Briggs, J., dissented, and certified that the judgment was in conflict with controlling decisions, stated, of this court, and thereupon the cause was transferred to this court under section 6 of the amendment of 1884. It is therefore our duty to hear and determine the cause as if this court had original jurisdiction of this appeal.

The Western Commercial Travelers Association is a corporation organized under article 10, chapter 42, Revised Statutes 1889, relating to the benevolent, fraternal-beneficial companies. Under its by-laws four thousand dollars is paid upon the death of a member to the beneficiary named in his certificate, or failing such beneficiary, to the heirs of the member. On the thirty-first of December, 1880, Joseph Levy became a member and designated his sister, Pauline Levy, as his beneficiary. He was then solvent and continued so until 1891. During these eleven years he paid $279 in contributions to the death fund. In 1891 he failed and the plaintiff and others obtained judgments against him. After 1891 and until his death on the sixteenth of December, 1897, Levy paid $290 in contributions to the death fund. Upon his death the plaintiff brought suit against his beneficiary, Pauline Levy, and the association, seeking to have the $4,000 applied to the payment of plaintiff's judgment against Levy. Upon a stipulation between plaintiff and defendant the association paid the $4,000 into court and was discharged; the sum of $100 was allowed to the attorneys of the association for services; the court ordered $1,400 paid to Pauline Levy and that the plaintiff and defendant interplead for the $2,500, which they did.

Pauline Levy's interplea sets out the character of the association, its by-laws, etc., above referred to, the fact that she is the beneficiary named in the certificate, the death of her brother, and prays judgment.

The plaintiff's interplea sets out the same general facts, with the additional allegation as to the recovery of judgments aforesaid, the payment of the $279 by Levy while he was solvent, and of the $290 after he became insolvent, and then pleads separately the following:

"Further interpleading this interpleader says that after the rendition of said judgments against said Joseph Levy and while he was insolvent, as stated in the first count hereof, the said Joseph Levy, while residing with his said sister Pauline Levy and her children, gave her from his earnings for the shelter, support, maintenance, clothing and other expenses of the said Pauline Levy, and for the shelter, support, maintenance, clothing, education and other incidental expenses of her minor children, large sums of money, to-wit, the sum of at least $1,750 per year, aggregating for said six and one-half years intervening between the date of the rendition of said judgments and the date of the death of said Joseph Levy, the sum of at least $11,375.   That the said sum of money so given to said Pauline Levy was not given her as a contract price for board and accommodation, but was given to her from time to time for the shelter, support, maintenance and other expenses of herself and children, and for the education of her said children as aforesaid, which sum so given to said Pauline Levy during said six and one-half years was at least $5,500 in excess of the sum which similar board and accommodations were worth, and for which they could have been procured by the said Joseph Levy for himself individually elsewhere. This interpleader further states that the said Pauline Levy has spent the said sums of money so given her by the said Joseph

Levy.   That the said Pauline Levy is now insolvent and this interpleader can not, by garnishment or other proceedings at law against said Pauline Levy, compel her to satisfy this interpleader's said judgments out of the moneys so given her by the said Joseph Levy in fraud of his said creditors as aforesaid."

Pauline Levy moved to strike out of plaintiff's interplea the matter specifically quoted, as surplusage, irrelevant, immaterial, and, if true, having no bearing on the claim of either party to the fund in controversy.   The court sustained this motion on the fourth of April, 1898.   Plaintiff filed a motion to vacate the order sustaining said motion on the eighth of April, 1898.   In the transcript certified by the clerk there is a statement by the clerk that both parties then filed motions for judgment on the interpleas as they stood, but no such motions appear in the transcript or appear to have been made a part of the record by any bill of exceptions, and therefore the recital of the clerk is of no avail (State ex rel. Malin v. Merriam, 159 Mo. 655) and no such motions are before us for consideration.

The court, on April 26, 1898, rendered judgment for the defendant.   The judgment after reciting the appearance of the parties sets out:   "And the several motions of the said parties for judgment upon the pleadings having been submitted to the court and the allegations in the said several interpleas being undenied and admitted, and the court being fully advised of and concerning the premises," etc., awarded the fund in court to the defendant.   No motion for new trial was filed.   Thereafter on the twenty-first of May, 1898, the plaintiff filed his bill of exceptions and appealed to the court of appeals.

The bill of exceptions simply sets out the portion of the plaintiff's interplea challenged, the motion to strike it out, the

ruling of the court sustaining the motion to strike out, the motion to vacate the order sustaining the motion, and exceptions properly saved to all said matters. Then, as stated, the case was appealed to the St. Louis Court of Appeals, and by that court certified to this court, for the reasons stated.

## I.

The plaintiff has properly saved the right to have the action of the trial court on the motion to strike out, reviewed by this court. No motion for a new trial was necessary to preserve this right. "It is not usual or necessary to file a motion for a new trial for the mere purpose of having the court to twice hear the same motion or demurrer." [O'Connor v. Koch, 56 Mo. l. c. 262; Butler v. Lawson, 72 Mo. l. c. 244.]

The substance of the matter struck out is that, while residing with his sister, Joseph Levy gave her from his earnings for the shelter, support, maintenance, clothing and other expenses of herself and children, the sum of $1,750 a year for the six and a half years after he became insolvent and before his death, aggregating $11,375; that it was not given to her as a contract price for board, but "was at least $5,500 in excess of the sum for which similar board and accommodations were worth and for which they could have been procured by the said Joseph Levy for himself individually elsewhere;" that Pauline has spent the money and is insolvent; that such payments were a fraud on the plaintiff, and therefore he asks to compel Pauline to pay his judgment out of these benefits accruing to her from her brother's membership in the fraternal-beneficial association.

Under the facts stated, Joseph Levy was the head of a family, composed of himself, his sister and her children. He had a right to support them although he could not be com-

pelled to do so.   As such head of a family he was entitled to the exemptions allowed by statute to the head of a family. The identical question was decided by this court in Wade v. Jones, 20 Mo. 75, and has been the law in this State ever since.   [Broyles v. Cox, 153 Mo. l. c. 284.]

Section 5851, Revised Statutes 1889, permits a married woman to insure the life of her husband and hold the insurance free from the claims of his creditors, but provides that "when the premiums paid in any year out of funds or property of the husband shall exceed five hundred dollars, such exemptions from such claim shall not apply to so much of said premiums so paid as shall be in excess of five hundred dollars, but such excess, with interest thereon, shall inure to the benefit of his creditors."

In Pullis v. Robison, 73 Mo. 201, it was held, that, if the husband's money was paid both before and after he became insolvent, "so much of the insurance as was the product of the premiums paid by the husband while he was solvent" went to the wife and that the creditors were entitled to "so much as was the product of the premiums paid by him after he became insolvent."   But in Judson v. Walker, 155 Mo. 166, it was pointed out by VALLIANT, J., that after the decision in Pullis v. Robison, *supra,* the Legislature amended the statute as it was when the Pullis case was decided, and provided that the creditor is entitled only to the excess over five hundred dollars paid as premiums in any year, with interest thereon, and not to the product of the premiums paid, as was held in the Pullis case.   And this is not only the plain mandate of the statute, but is consonant with reason, for as aptly said in the Judson case: "Proceeds of life insurance, therefore, are not the product of premiums alone, but of premiums united with the beneficiary's insurable interest.   After the transfer of the policies we are now considering, they rested no longer on the insurable

Vol 159 mo—40

interest of Walker in his own life, in which his creditors were concerned, but depended for their validity upon the insurable interest of the wife and children in the life of their husband and father. Without that interest, the insurance, standing as it did in their name, would have been invalid; it would have been no insurance, and there would have been no proceeds. Therefore, while the creditors have *some* right to the money that was used for premiums, and to the value of the old policies converted, they have no further right in the proceeds of the insurance."

It is argued, however, that this applies only to a wife and not to a sister, and that the rule in the Pullis case applies to a sister. This contention is based upon the theory that it is not the duty of a brother to support his widowed sister and her children. But while it is not his duty, he has a right to do so, and if he resides with them and provides for them he is the head of a family and entitled to the same exemptions as if he had a wife living with him.

Section 5853, Revised Statutes 1889, gives a sister an insurable interest in her brother's life. Without this provision this policy of insurance would be void, and no matter how much premiums were paid neither the sister nor the brother's creditors would be able to collect a cent of the insurance after his death. So here, as in the Judson case, the proceeds of this insurance, "are not the product of premiums alone, but of premiums united with the beneficiary's insurable interest." For this reason alone it is clear that the rule laid down in the case of Pullis v. Robison, 73 Mo. 201, is not the true rule now, and was not the true rule even under the statute as it stood then. But if a man is entitled to his salary and certain exemptions as the head of a family which his creditors can not touch, and if he chooses to spend a part of his salary in premiums for life insurance for the benefit of his family after he

is gone, his creditors are not thereby defrauded, for he has withdrawn no part of his property which his creditors could touch. Hence the provision added to the statute in 1879 did not change the right of a head of a family under the exemption laws. Under the law as it stood when the Pullis case was decided the head of a family could use his salary and his exempt property up to the value of $300, to pay the yearly premiums on insurance for his family, without defrauding his creditors. Such an use of his exempt property no more defrauded his creditors than if he had spent it in riotous and high living or than if he had paid necessary expenses or had given it away. The statute at that time was simply declarative of a right he had before. The amendment of 1879 raised the limit of exemptions, *pro hac vice*, from three hundred to five hundred dollars, but it did not change the principle involved. Afterwards, as before, it was a fraud for an insolvent to withdraw the excess of his property over his exemptions from the reach of his creditors and invest it in insurance for his family, and such excess, representing the extent of the fraud, with interest, the creditors can reach. But as the premiums did not alone produce the proceeds of the insurance and it required also an insurable interest to produce such proceeds, and as there is no legal formula for apportioning the proportion of such excess that should be credited to the payment of premiums and the portion that should be credited to insurable interest, the courts take the only practical course and do not attempt to work out such a formula or distribution, but award the creditor the known sum so fraudulently withdrawn from the reach of the creditors, the excess over the exemption, and restore it to the creditors with interest. Thus the creditor is placed in the same position that he would have been in if the fraud had not been perpetrated—he gets all the property of the debtor that he has a right to touch, and the interest allowed is the legal meas-

ure of his damages for not getting the money when he should have gotten it.

Section 5853, Revised Statutes 1889, giving a sister an insurable interest in a brother's life, does not contain a similar proviso to that contained in section 5851 as to the wife paying the premiums out of her husband's money (or his doing so for her), but in view of what has herein been said this difference is immaterial, except as to the amount of the exemption. The statutes of exemption, section 4903, make the exemptions to a head of a family, who, as shown, need not necessarily be a married man. And section 5220, Revised Statutes 1889, exempts from garnishment the wages of the head of a family, for the last thirty days' services. Hence it is no fraud for a brother who is the head of a family composed of himself, his sister and her children to apply his wages or his exempt property to the procuring of insurance for her benefit, for his creditors can not touch the wages or property and have no right to complain if he uses it thus providently and properly instead of wasting it. Therefore, section 5853 is as effective for a sister so situated, as section 5851 is to a wife, except as to the former only the wages and $300 can be used, and to the latter the wages and $500 can be used to buy insurance.

What is said in the plaintiff's interplea as to the amount contributed by Joseph Levy to his sister being $5,500 in excess of what he could have procured similar board for elsewhere is of no consequence. The laws of our country give no court power to determine how much a man may spend for board, nor to inquire whether he paid too much or too little therefor and to make the landlord refund the excess to his creditors if it was too much or to allow the landlord for the difference if it was too little. However, this case does not depend upon any such considerations, for as shown, Levy was not a boarder, but the head of the family.

The motion to strike out the designated part of the plaintiff's interplea was properly sustained.

## II.

It is claimed that the motion for judgment on the pleadings is a demurrer, and hence is part of the record proper, and therefore no motion for new trial or bill of exceptions was necessary, but that the court will review the judgment upon the record, so constituted.

A motion for judgment on the pleadings is not a demurrer. It partakes of some of the qualities of a demurrer but it is not a demurrer, and hence it is not a part of the record.    It is a matter of exception and can only be made a part of the record by a bill of exceptions.

It partakes of the nature of a demurrer, in that, it admits all facts that are well pleaded, and if it is overruled the order overruling it is not a final judgment from which an appeal will lie, but the party may plead over or proceed to trial on the issues joined.    On the contrary, if it is sustained, judgment goes at once, whereas if a demurrer is sustained the order is not a final judgment, the party has a right to plead over, and it is only in case of refusal to plead over that final judgment can be rendered on demurrer.

There is no motion for judgment on the pleadings contained in this record.    The bill of exceptions filed does not call for any such motion, and therefore there is no such question open to review in this case.

## III.

But if a motion for judgment on the pleadings could be treated as a demurrer and hence a part of the record, without

being made so by a bill of exceptions, it would avail the plaintiff nothing in this case, for the reason that the transcript does not contain any such motion, and therefore *quoad hoc* there is no such record in this case.

## IV.

Aside from all this, however, if the motion for judgment was a demurrer or had been made a part of the record, and if ,the whole case appeared to this court just as plaintiff contends the facts show the status of the controversy to be, the judgment of the circuit court would have to be affirmed. It is claimed that between the time Joseph Levy became insolvent in 1891, .and his death in 1897, a period covering six and a half years, he paid $290 in premiums, properly speaking assessments, to the association to preserve his right to benefits therein. If this be conceded, it was ten dollars less than the three hundred dollars exemptions which he had a right to spend in that manner. There was no excess over the amount exempted to him (not taking his salary into account at all) that was invested in this way, and as shown, the creditors are only entitled to recover the excess, with interest, over the amount he is entitled to spend *every* year for this purpose. Here the total spent for six and a half years was ten dollars less than he was entitled to spend for insurance for the benefit of his sister every year, no matter how insolvent he may have been.

For these reasons the judgment of the circuit court is affirmed. All concur.