HELVERING, Com'r of Internal Revenue, v. PARKER et al.

No. 10200.

Circuit Court of Appeals, Eighth Circuit.
July 20, 1936.

839

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Stanley S. Waite, of St. Louis, Mo. (Abraham Lowenhaupt, H. M. Stolar, and Wm. F. Fahey, all of St. Louis, Mo., on the brief), for respondents.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The Commissioner of Internal Revenue petitions for a review of a decision of the Board of Tax Appeals (Parker v. Commissioner of Internal Revenue, 30 B.T.A. 342) which reduced the amount of an alleged deficiency in an estate tax under the Revenue Act of 1924 (43 Stat. 253) to the extent of $2,324, by eliminating from the gross estate the value of certain policies of life insurance. Herbert L. Parker died December 15, 1924. The respondents were his executors and are now testamentary trustees of his estate. In making their federal estate tax return, they omitted four policies of life insurance payable to decedent's wife, aggregating $29,155.36. The Commissioner added the value of these policies to the gross estate. The respondents appealed to the Board of Tax Appeals, which held that this insurance was not part of the estate. The Commissioner contends that the Board was wrong.

One of the policies was issued by the New York Life Insurance Company March 7, 1893. Three of the policies were issued by the Union Central Life Insurance Company on May 15, 1903. All of the policies were taken out by the decedent upon his own life. They were payable to his wife in case she survived him, otherwise to his executors, administrators, or assigns. The insured reserved no right to change the beneficiary. The policies were written in Missouri, where the insured resided and continued to reside. Each of the Union Central policies provided that the contract should be held and construed to have been made in Ohio.

The New York Life policy was paid up March 7, 1913, and remained in force. After that date the insured had no right to surrender it or to borrow money upon it. He had a right to future dividends, which could be taken in cash or in paid-up additional insurance. At the time of his death there was $105.36 of such added insurance, which the Board included in the gross estate. Under the three Union Central policies, the insured might have taken the reserve value on July 15, 1923, by surrendering the policies. He did not surrender them, and thereafter no right to surrender them existed. Each of the Union Central policies contained a loan provision, but required the "legal assignment of the policy to the company as collateral security." Under the the terms of these three policies the vested interest of the beneficiary could not be divested without her consent, hence there could be no legal assignment of the policies by anyone but herself. Missouri State Life Ins. Co. v. California State Bank et. al., 202 Mo.App. 347, 216 S.W. 785; Blum v. New York Life Ins. Co. et al., 197 Mo. 513, 523, 95 S.W. 317, 319, 8 L.R.A.(N.S.) 923, 7 Ann.Cas. 1021; Central National Bank of Washington v. Hume, 128 U.S. 195, 206, 9 S.Ct. 41, 32 L. Ed. 370; Cornell v. Mutual Life Ins. Co. of New York, 179 Mo.App. 420, 429, 165 S.W. 858; Union Central Life Ins. Co. v. Buxer, 62 Ohio St. 385, 57 N.E. 66, 49 L. R.A. 737; Levy's Estate v. Commissioner of Internal Revenue (C.C.A.2) 65 F.(2d) 412, 415; Supreme Council of Royal Arcanum v. Behrend, 247 U.S. 394, 398, 38 S. Ct. 522, 62 L.Ed. 1182, 1 A.L.R. 966; Walker v. United States (C.C.A.8) 83 F. (2d) 103.

At the time of his death the insured had, by the terms of the policies, no rights which he could exercise without the consent of the beneficiary..

The controlling statute is section 302 (g) of the Revenue Act of 1924, 43 Stat. 253, 304, 305 (26 U.S.C.A. § 411 note), which requires that the value of the gross estate for estate tax purposes shall include "the excess over $40,000 of the amount receivable by all other beneficiaries [than the executor] as insurance under policies taken out by the decedent upon his own life."

■ Where an insured reserves the right to surrender and cancel policies of life insurance, to pledge them for loans, and to dispose of them and their proceeds for his own benefit during life, the termination of that right by death is a transfer within the reach of the taxing power. Chase National Bank v. United States, 278 U.S. 327, 335, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Walker v. United States (C.C.A.8) 83 F.(2d) 103, 108. Where the insured reserves no rights incidental to ownership or control of the policies, so that death transfers nothing to the beneficiary and shifts no economic benefits, there is no transfer within the reach of the taxing power, and such policies are not covered by the statute. Industrial Trust Co. et al. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191; Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L. Ed. 160; Walker v. United States (C.C.A. 8) 83 F.(2d) 103, 108, 110.

■ The situation here presented is the identical situation considered and ruled by us in favor of the taxpayer in Walker v. United States, 83 F.(2d) 103, at page 110, unless there is some statutory or other provision affecting the Parker policies which distinguishes them from the policies there considered. The suggestion of petitioner that policies written before the effective date of the Revenue Act of 1918, 40 Stat. 1057 (the first Federal estate tax statute), and policies written or which might have been surrendered by an insured thereafter stand upon a different basis, on the theory that it was the intention of Congress, therein first expressed, to prevent resort to insurance to avoid estate taxes, we need not discuss.

The policies here in controversy were all written long before the Revenue Act of 1918 came into being, and, under settled rules of law, the rights of the beneficiary vested when the policies were issued. The fact that the insured did not, until July 15, 1923, lose his right to surrender the Union Central policies, we regard as of no consequence. In the Bingham Case, 296 U.S. 211, at page 215, 56 S.Ct. 180, 80 L.Ed. 160, this same argument was made with respect to a policy which could have been surrendered after 1918. It was rejected by the Supreme Court.

■ A statute of Missouri (section 6149, Revised Statutes of Missouri 1919 [now Revised Statutes Mo.1929, § 5739, Mo.St.Ann. § 5739, p. 4383]), enacted in 1899, provides that in the event that a wife who is the beneficiary of a policy on her husband's life dies or is divorced, he may designate another beneficiary, and that premiums paid out of the husband's funds in excess of $500 in any year shall inure to the benefit of creditors. It is claimed by petitioner that in some way, not readily apparent, this statute made the interest of the beneficiary of these policies contingent, and clothed the insured during his lifetime with some indicia of ownership which he would not otherwise have possessed. The statute was not in existence at the time the New York Life policy was issued and could not affect it. Blum v. New York Life Ins. Co. et al., 197 Mo. 513, 95 S.W. 317, 8 L.R.A.(N.S.) 923, 7 Ann.Cas. 1021. There may be some doubt whether the Union Central policies are governed by the laws of Missouri or the laws of Ohio, but we think it makes no difference. The beneficiary of these policies had a vested interest in them while she lived and remained the wife of the insured. After 1923 the insured had no control over them or their proceeds. Neither the policies nor their proceeds were subject to the claims of the insured's creditors, if he had any. Judson v. Walker et al., 155 Mo. 166, 55 S.W. 1083, 1089; Sternberg v. Levy, 159 Mo. 617, 60 S.W. 1114, 53 L.R.A. 438. Since he had nothing, either under the policies or under the Missouri statute, that passed to the beneficiary or enlarged her rights upon his death, these policies were no part of his gross estate.

The decision of the Board of Tax Appeals is affirmed.