Quin MORTON, Executor of the Estate of D. Holmes Morton, Deceased, Appellee,

v.

UNITED STATES of America, Appellant.

No. 71–1861.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1972.

Decided April 10, 1972.

———◆———

Gary R. Allen, Atty., Tax Div., Dept. of Justice (Fred B. Ugast, Acting Asst. Atty. Gen., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Ernest J. Brown, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, and W. Warren Upton, U. S. Atty., on brief), for appellant.

Thomas N. Chambers, Charleston, W. Va. (Lee O. Hill, and Jackson, Kelly,

Holt & O'Farrell, Charleston, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by the United States from a judgment of the District Court for the Southern District of West Virginia granting the plaintiff a refund of federal estate tax paid. The district judge concluded there was an overassessment because the Commissioner erroneously included in the gross estate the proceeds of a policy of life insurance. We affirm. We think that the decedent did not possess any of the incidents of ownership of this insurance policy at the time of his death so as to require inclusion of the proceeds in the decedent's gross estate under Section 2042(2) of the Internal Revenue Code of 1954.

The facts are not disputed and are set out in detail in the lower court's opinion, Morton v. United States, 322 F.Supp. 1139 (S.D.W.Va.1971). Briefly, the policy was taken out in 1932 by the decedent at the instigation of his father-in-law, who wanted to provide financial security for his daughter. The decedent paid none of the premiums on this insurance policy and it is clear that he never considered that he "owned" it.[1] The premiums were paid by his father-in-law, then by a corporation owned by the decedent's wife and her sister, and finally by the decedent's wife until the decedent's death in 1963. The policy was kept in the office safe of another corporation owned by the decedent's wife and her sister.

The provisions of the policy which have a bearing on whether or not the proceeds should be included in the decedent's gross estate have been summarized correctly by the district court as follows:

1. *Assignments.* No assignment of the policy would be binding upon the Company until filed at its home office, and the Company assumed no responsibility as to the validity or effect of any assignment.

2. *Premium loans.* The insured and assignees, if any, could request the insurer for a premium loan provided the request was made prior to default and the cash surrender value was sufficient to cover the premium then due.

3. *Cash surrender value.* Upon receipt of the policy and a full and valid surrender of all claims thereunder, and "without the consent or participation of any Beneficiary not irrevocably designated or any Contingent Beneficiary" the Company would pay the cash surrender value of the policy.

4. *Policy loans.* At any time after premiums for two full years had been paid and while the policy was in force except as extended-term insurance, without the consent or participation of any beneficiary not irrevocably designated or any contingent beneficiary, a policy loan could be obtained by properly assigning the policy and forwarding it to the Company at its home office. The amount of the policy loans was limited to the amount secured by the cash surrender value of the policy.

5. *Dividend options.* At the option of the insured, dividends could be (a) withdrawn in cash; (b) applied toward the payment of premiums; (c) applied toward the purchase of a participating paid-up addition to the policy; (d) left to accumulate with interest. Dividends were subject to withdrawal in cash at any time or could be paid with the proceeds of the policy.

6. *Endowment option.* Whenever the reserve on the policy at the end of a policy year, together with the reserve on the existing dividend additions,

---

[1] Decedent was meticulous in keeping business records. Never did he include the cash surrender value of the policy in computing his own net worth.

should be equal to or in excess of the face amount of the policy, the insured could upon surrender of the policy, as well as a full and valid surrender of all claims thereunder, without consent or participation of any beneficiary not irrevocably designated or any contingent beneficiary, obtain the face amount of the policy.

7. *Full paid participating insurance.* The insured could obtain full paid participating insurance provided certain specified conditions were met.

8. *Paid-up insurance.* The insured and assigns, if any, upon written request to the Company, could obtain participating paid-up life insurance instead of automatic extended-term insurance, if such request was made prior to default in premium payment or within the grace period.

9. *Beneficiaries.* The insured could (1) designate one or more beneficiaries either with or without reservation of the right to revoke such designation; (2) designate one or more contingent beneficiaries; (3) change any beneficiary not irrevocably designated; and (4) change any contingent beneficiary.

10. *Method of payment.* The insured could designate the method by which the proceeds of the policy would be paid to the beneficiaries.

11. *Reinstatement.* The insured could have the policy reinstated at any time within five years after default in payment of premiums by paying all premium arrears, with interest, and any indebtedness which might exist, with interest, upon evidence satisfactory to the Company of his insurability.

Morton v. United States, *supra* at 1143–1144. In 1938 the decedent executed an endorsement of the policy effecting an irrevocable designation of beneficiaries and mode of settlement.[2] It is the effect of this endorsement upon the other terms of the policy which is determinative of the issue raised.

Section 2042 of the Internal Revenue Code of 1954 provides in relevant part as follows:

§ 2042. Proceeds of life insurance. The value of the gross estate shall include the value of all property.—

(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. . . .

Incidents of ownership are not defined by the Code, but the Regulations provide,

For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or

2. The relevant portions of this endorsement are as follows:

Charleston, W. Va.
April 4, 1938.

I, D. HOLMES MORTON, the insured under policy No. 2414879, issued by The Northwestern Mutual Life Insurance Company, hereby designate Boydie Cox Morton, Quin, Emmy Lou and Margaret Morton, wife and children, born August 28, 1891, July 20, 1913, November 28, 1914 and May 10, 1917, respectively, as direct beneficiaries thereunder, share and share alike, the survivors or survivor, except that in event of the death of any of my said children, either before or after my death, leaving lawful child or children and/or widow surviving, the share of such deceased child shall be paid in due course to his or her lawful child or children, if any, share and share alike, the survivors or survivor, or if none survive, to the widow, such child or children or widow, as the case may be, taking the share which the deceased child would have taken, if living.

.        .        .        .        .

I HEREBY WAIVE the right to change or revoke the foregoing.

his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. . . .[3]

Reg. 20.2042–1(c) (2).

It is clear that before the execution of the irrevocable designation of beneficiaries and mode of settlement the policy conferred upon the decedent, as the insured, many, if not all of the powers which Congress had in mind as being incidents of ownership sufficient to cause the proceeds to be included in his gross estate. Ordinarily the possession by the insured of the power to cash the policy in, to elect the endowment option, to get a loan on the policy or to change the beneficiary is sufficient to cause the proceeds to be included in his gross estate. United States v. Rhode Island Hospital Trust Co., 355 F.2d 7 (1st Cir. 1966). However, we think that the irrevocable designation of beneficiaries and mode of settlement, coupled with payment of premiums by persons other than the insured, made it legally impossible for the decedent to exercise other powers purportedly given him as insured by the policy in such a way that any economic benefit would accrue to him or his estate or so that he could subsequently control the transfer of the proceeds of the policy.[4]

The government concedes that the endorsement of April 7, 1938, divested the decedent of the right to change beneficiaries and to select another method of payment. However, it maintains that other provisions of the policy were left unaffected and there remained in the decedent some incidents of ownership.

■■■ It is well established that if the insured retains no right to change the beneficiary of a life insurance policy or, as here, gives up that right, the beneficiary stands in the position of a third party beneficiary to the insurance contract with indefeasibly vested rights in the proceeds. Central National Bank of Washington v. Hume, 128 U.S. 195, 206, 9 S.Ct. 41, 32 L.Ed. 370 (1888). See generally 4 Couch on Insurance 2d § 27:56. This is the law of West Virginia. Hechmer v. Gilligan, 28 W.Va. 750, 755 (1886). Most authorities are also in agreement that the insured cannot deal with the policy in such a way as to defeat the irrevocably designated third party beneficiaries' interest in the proceeds, by, for example, surrendering the policy for its cash surrender value, without the consent of the beneficiaries,[5] and we think the district court was clearly correct that this result would obtain in West Virginia. Castellina v. Vaughan, 122 W.Va. 600, 11 S.E.2d 536 (1940). See also West Virginia Code § 33–6–23 (Michie 1966) for its negative implication.

The inquiry is not ended here, however. The district court rejected the

---

3. This list of examples of incidents of ownership is substantially the same as that in the committee reports. See H. Rep.No.2333, 77th Cong., 2d Sess. p. 163 (1942–2 Cum.Bull. 372, 491); S.Rep.No. 1631, 77th Cong., 2d Sess., p. 235 (1942–2 Cum.Bull. 504, 677).

4. The government contends that if the decedent retained powers which can effect the transfer of the policy proceeds, even though without possible economic benefit to him, Section 2042 would require inclusion of proceeds of the policy in the gross estate. Since we hold that the decedent had effectively assigned the

policy, it is unnecessary to decide whether retention by him of incidental powers which could not possibly occasion him economic benefit might be sufficient "incidents of ownership" to bring the proceeds of the policy within Section 2042 (2).

5. Central National Bank of Washington v. Hume, supra; Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160 (1935); Lockwood v. Michigan Mutual Life Insurance Co., 108 Mich. 334, 66 N.W. 229 (1896). Contra Townsend's Assignee v. Townsend, 127 Ky. 230, 105 S.W. 937 (1907).

government's secondary contention that even if the insured had no independent power he nevertheless had the power to act "in conjunction with" the beneficiaries in exercising incidents of ownership and thus the proceeds of the policy would be includable in the decedent's gross estate under the express language of Section 2042(2) of the Code. We agree that the decisive factor is the existence of the *power* to exercise incidents of ownership either alone or in conjunction with any other person. Commissioner of Internal Revenue v. Noel's Estate, 380 U.S. 678, 684, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965).[6] If both the decedent and the beneficiaries were legally required to act in conjunction in order to affect any of the options of the policy which could be called incidents of ownership, and even if these options could only be exercised in the best financial interest of the beneficiaries and with the approval of a court, the decedent nevertheless possessed the power to exercise the incidents of ownership "in conjunction with any other person." That would suffice under Section 2042(2) to bring the proceeds of the policy within the gross estate. But we are convinced the beneficiaries could effectively act alone to exercise the incidents of ownership. Participation by the decedent "in conjunction with" the beneficiaries was not required, we think, on the facts of this case.

The law of West Virginia and other jurisdictions with regard to the right of irrevocably designated beneficiaries to exercise options of a life insurance policy without the consent of the insured is unclear at best. *See* 4 Couch on Insurance 2d § 27:67. Other courts which have considered analogous insurance problems have done so in light of earlier revenue acts which did not make the proceeds taxable if any incident of ownership was exercisable in conjunction with another person, and hence did not fully consider whether the consent of the insured would be a prerequisite to the exercise of a particular power by an irrevocably designated beneficiary.[7] We think that whether or not an irrevocably designated beneficiary would have the right to obtain a loan on the policy, cash it in, or elect the endowment option when the *insured* had paid the premiums is doubtful. The indefeasibly vested right to the proceeds by the beneficiary probably would not extend to the right to the use of the premiums which these options represent when the premiums were contributed by another. However, when the irrevocably designated beneficiary has also paid the premiums,[8] we think that he has the legal power to exercise the options in the insurance contract which pertain to the use of these premiums without participation of the insured.

Full paid participating insurance, dividends, paid-up insurance, cash surrender value, premium loans and the endowment option all represent use of the premiums with the consent of the insurance company. We think that general principles of equity and contract law strongly suggest that exercise of such premium payment derived rights properly belong to the irrevocably designated beneficiary who has paid the premiums to the exclusion of the insured who contributed nothing. It is not necessary to ignore

6. Whether or not Noel goes further and rules out any inquiry as to the intent of the insured and the beneficiaries when the terms of the policy are clear need not be decided.

7. *See* Helvering v. Parker, 84 F.2d 838 (8th Cir. 1936), and Walker v. United States, 83 F.2d 103 (8th Cir. 1936). Morse v. Commissioner of Internal Revenue, 100 F.2d 593 (7th Cir. 1938), relying in part on Helvering v. Parker, *supra*, held that the insured could not deduct the cash value of insurance as a loss upon the bankruptcy of the insurance company because he had irrevocably designated the beneficiary. The court did not hold that the beneficiary could obtain the cash value without the consent of the insured, though this result would seem to be implied.

8. It is of no consequence, we think, that initially the premiums were paid by others.

the policy facts in order to recognize that with respect to premium derived options it is clear that the decedent never considered the policy his, and had the question come up, that all parties would have doubtless agreed that the decedent's wife should be entitled to exercise these options.

▮▮▮▮ The options for premium loans and reinstatement provide for methods of keeping the policy alive in the event of nonpayment of premiums, and the insured's participation would not be necessary where the beneficiary has a vested right to the proceeds. To hold otherwise would allow the insured to indirectly defeat this vested interest. We hold that where an insured has never paid a premium and has never for any purpose treated the policy as his own that his irrevocable designation of beneficiaries and mode of payment of proceeds is an effective assignment of all of his incidents of ownership in the policy.

The judgment of the district court will be

Affirmed.