ESTATE OF SIDNEY F. BARTLETT, MIRIAM B. BUTTERFIELD, EXECUTRIX, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5909–67. Filed August 6, 1970.

*Michael K. Cavanaugh* and *John R. F. Baer*, for the petitioner.
*Bert L. Kahn*, for the respondent.

## OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $5,518.99 in the estate tax of petitioner. This asserted deficiency and a claimed

overpayment of $3,512.72 are in dispute. In addition, petitioner has reserved the right to claim a deduction for reasonable legal fees incurred in this proceeding.

Concessions have been made by both parties. The issue presented for our decision is whether the decedent possessed at his death any incidents of ownership in certain life insurance policies and a group term life insurance policy so as to require the inclusion of the proceeds of such insurance in his gross estate under the provisions of section 2042(2), I.R.C. 1954.[1]

All of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference and adopted as our findings. The pertinent facts are summarized below.

Petitioner, an individual fiduciary, is the duly appointed executrix under the last will and testament of Sidney F. Bartlett, deceased. She was a legal resident of Glencoe, Ill., on the date she filed her petition in this proceeding. Sidney F. Bartlett (herein sometimes called decedent), a resident of Winnetka, Ill., died testate on November 3, 1963. Petitioner filed the Federal estate tax return of the decedent on February 1, 1965, with the district director of internal revenue at Chicago, Ill., and paid the tax reported thereon in the amount of $3,647. On December 6, 1965, petitioner paid an additional assessment of $3,512.72 plus interest of $175.64.

On September 22, 1955, the decedent was the owner of the following life insurance policies:

| Item No. | Company and policy No. | Face amount | Date-of-death value |
|---|---|---|---|
| 1 | Massachusetts Mutual Life Insurance Co., No. 889191 | $15,000 | [1]$15,393.27 |
| 2 | Northwestern Mutual Life Insurance Co., No. 2398022 | 5,000 | 5,162.77 |
| 3 | Mutual Benefit Life Insurance Co., No. 759936 | 5,000 | [2]5,077.95 |
| 4 | Fidelity Mutual Life Insurance Co., No. 279869 | 4,000 | 4,017.28 |
| 5 | Fidelity Mutual Life Insurance Co., No. 325783 | 1,000 | 1,000.53 |
| 6 | Union Central Life Insurance Co., No. 645954 | 6,000 | 6,017.12 |
| 7 | Decedent was insured under the Equitable Life Assurance Society Group Life, policy No. 7459-39656 (group term) covering the employees of United States Gypsum Co. for the amount of | 15,000 | 15,000.00 |
| | | 51,000 | [1]51,668.92 |

[1] Item 1 is not at issue. Amount of insurance at issue per the notice of deficiency is ($51,668.92 −$15,393.27) $36,275.65.
[2] Item 3 is conceded by respondent, leaving $31,197.70 of insurance at issue.

On September 23, 1955, the decedent and the Northern Trust Co. (trustee) through its duly authorized agent executed a document entitled "Insurance Trust" (trust agreement). The trust agreement provides, in material part, as follows:

### INSURANCE TRUST

THIS AGREEMENT, made and executed this 23rd day of September, 1955, between SIDNEY F. BARTLETT, of Winnetka, Illinois (hereinafter called the "In-

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

sured"), and THE NORTHERN TRUST COMPANY, an Illinois corporation, of Chicago, Illinois (hereinafter called the "Trustee"),

WITNESSETH :

FIRST: The Insured has delivered to the Trustee the policies of insurance set forth in Exhibit A attached hereto and made a part hereof and hereby assigns, transfers and conveys to the Trustee all right, title, and interest of said Insured in and to said policies and any death benefits thereunder. The Insured agrees to cause the death benefits thereunder to be made payable to the Trustee, the proceeds of which policies are to be held in trust under the terms and conditions as hereinafter set forth. The Insured may add other insurance policies to the trust hereby created by making such insurance payable to the Trustee hereunder, and, if so added, the proceeds of such additional policies shall be covered by the provisions hereof, the same as if originally included hereunder. The Trustee is not obligated to pay any premiums or assessments upon said policies or to keep itself informed with respect to the payment thereof, and its sole responsibility in reference thereto during the lifetime of the Insured shall be the safekeeping of said policies.

SECOND : No insurance company whose policy or policies shall be deposited hereunder and who shall make payment of the proceeds thereof to the Trustee shall be required to inquire into or take notice of any of the provisions of this instrument or to see to the application or disposition of the proceeds of said policies, and the receipt of the Trustee to any such insurance company shall be effectual to release and discharge it for any payment so made and shall be binding upon every beneficiary of the trusts hereby created.

THIRD : Upon the death of the Insured, the proceeds of all insurance policies then subject to this Agreement shall be collected by the Trustee. The Trustee shall have full authority to take any action in regard to the collection of the same that it deems best and to pay the expense thereof out of the trust estate and shall have full authority to make any compromise or settlement with respect to said policies, or any of them, that it may deem expedient, and to give to the insurance companies, and each of them, all the necessary and proper releases in full discharge of all their liabilities under such policies.

FOURTH: The proceeds of said policies of insurance, together with any other property which may be transferred to the Trustee as hereinabove provided, shall be held by the Trustee in trust for and upon the following trusts, purposes, and conditions :

SECTION 1: Upon the death of the Insured, the Trustee shall divide the trust estate as then constituted into equal separate shares so as to provide one share for each then living child of the Insured and one share for the then living descendants, collectively, of each deceased child of the Insured. The income and principal of each of said shares shall be held and disposed of as follows :

[Article Fourth then sets forth the dispositive provisions and the trustee's duties and powers with respect to investment and management of and accounting for the insurance proceeds.]

FIFTH : The trust hereby created is hereby declared to be irrevocable and not subject to any modification, alteration or amendment.

IN WITNESS WHEREOF, SIDNEY F. BARTLETT has hereunto set his hand and seal, and THE NORTHERN TRUST COMPANY has caused this instrument to be executed by its duly authorized officer, the day and year first above written.

On October 18, 1955, the trustee issued to the decedent a written acknowledgment of the receipt of the insurance policies (in the case of the group term policy, the certificate of insurance issued thereunder).

On September 26, 1955, the decedent, by counsel, requested change of beneficiary forms from each of the insurance companies whose policies are listed as items one through six above. Each of the letters sent stated:

Mr. Sidney F. Bartlett, the insured on the above policy, has recently executed an insurance trust agreement.

Please forward to us the proper change of beneficiary form so that the trustee established by said agreement may be made beneficiary.

With respect to the Mutual Benefit policy, Sidney F. Bartlett submitted to the insurer a change of beneficiary form which expressly reserved to him the rights to surrender the policy and procure loans thereon. The insurer then requested a copy of the trust agreement for its examination. The trustee sent the insurer a copy of the trust agreement. Subsequently, and by letter to the trustee dated October 20, 1955, the insurer stated that it had reviewed the trust agreement and that it assumed that Sidney F. Bartlett did "not wish to reserve any rights at this time." As an enclosure to its October 20, 1955, letter, the insurer sent the trustee a change of beneficiary form that did not contain any express reservation of rights. Decedent executed this second form under date of November 15, 1955, and submitted it to the insurer who accepted it. On April 23, 1956, the insurer wrote decedent's counsel a letter which stated, in part, as follows:

We should like to point out that although the trust agreement is dated September 23, 1955, ownership of the policy was not transferred to the trustee, The Northern Trust Company of Chicago, Illinois until November 15, 1955.

With respect to the Massachusetts Mutual policy, the decedent executed on November 15, 1955, and submitted to the insurer, a document entitled "Request for Amendment of Contract." This document was accepted by the insurer and provided, in material part, that (1) the trustee shall be beneficiary, (2) the trustee shall be the owner of the policy, and (3) the owner may exercise all policy rights.

Respondent does not seek the inclusion in the gross estate of the proceeds of the Mutual Benefit and Massachusetts Mutual policies, and the proceeds of those policies are not in issue.

With respect to the Northwestern Mutual policy, the decedent executed a form entitled "Designation of Trustee as Direct Beneficiary," naming the Northern Trust Co. as the irrevocable beneficiary. The Northern Trust Co executed its acceptance of the terms and conditions of this designation on the same form. Northwestern Mutual

accepted the designation on November 14, 1955. The Northwestern Mutual policy provides that:

No assignment of this policy shall be binding upon the Company until filed with the Company at its Home Office. The Company will assume no responsibility for the validity or effect of any assignment.

With respect to both Fidelity Mutual policies, the decedent executed on October 6, 1955, a form entitled "Trustee Beneficiary Designation," which named the Northern Trust Co. beneficiary of the policies. This designation was revocable under the terms of the form, which provided further that:

Article 3.—Assignment: The rights of every beneficiary of each policy are subordinate to the rights of any assignee who has filed a written assignment at the Home Office of the Company, whether the assignment was made before or after the date of this designation.

Fidelity Mutual accepted the designation on October 17, 1955. Both Fidelity Mutual policies provide that:

Assignment.—Any assignment of this policy must be made in duplicate, and no assignment of this policy shall be binding upon the Company until it be filed with the Company at its Head Office. The Company assumes no responsibility as to the validity of any assignment.

With respect to the Union Central policy, the decedent executed on October 5, 1955, a document entitled "Agreement of Change of Beneficiary," designating the Northern Trust Co. as beneficiary. This form reserved to the owner the right of revocation, assignment and "every benefit reserved." It was also "subject to any assignment." The designation was accepted by Union Central on October 14, 1955. The policy itself contained no provision regarding assignment.

The decedent, as an employee of the United States Gypsum Co., was covered by a group term life insurance policy issued by the Equitable Life Assurance Society of the United States. In 1961 the Travelers Insurance Co. assumed the obligations of this policy. On October 6, 1955, the decedent executed a form entitled "Group Insurance—Request for Change of Beneficiary," designating the Northern Trust Co. beneficiary of the policy. The designation was revocable. The policy provided that:

Assignments. No assignment of this policy by the Employer shall be binding upon the Society unless in writing and until filed at its Home Office. The Society assumes no responsibility for the validity of any assignment.

No assignment by any employee of any insurance under this policy shall be valid.

Until his death the decedent continued to pay the premiums on all the policies in issue, except the group term policy. Accumulated dividends were credited toward premium payments. The decedent shared with his employer the cost of the group term policy.

The decedent's last will and testament bequeathed his entire estate to his children. The proceeds of the various insurance policies were paid by the insurers to the trustee and were administered according to the terms of the trust agreement.

In his notice of deficiency dated September 14, 1967, respondent determined that the proceeds of the insurance policies in the amount of $36,275.65 were includable in the decedent's gross estate because he possessed at his death incidents of ownership in such policies.

As previously stated, the issue confronting us is whether any of the proceeds of the life insurance policies involved herein are includable in the gross estate of the decedent. Respondent contends that at the time of the decedent's death he possessed "incidents of ownership" in the five policies, so that the proceeds thereof are includable in the decedent's gross estate, as required by the provisions of section 2042 (2)[2] of the Code and section 20.2042–1(c), Estate Tax Regs.[3] To the

---

[2] SEC. 2042. PROCEEDS OF LIFE INSURANCE.
The value of the gross estate shall include the value of all property—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

[3] Sec. 20.2042–1(c). *Receivable by other beneficiaries.* (1) Section 2042 requires the inclusion in the gross estate of the proceeds of insurance on the decedent's life not receivable by or for the benefit of the estate if the decedent possessed at the date of his death any of the incidents of ownership in the policy, exercisable either alone or in conjunction with any other person. However, if the decedent did not possess any of such incidents of ownership at the time of his death nor transfer them in contemplation of death, no part of the proceeds would be includible in his gross estate under section 2042. Thus, if the decedent owned a policy of insurance on his life and, 4 years before his death, irrevocably assigned his entire interest in the policy to his wife retaining no reversionary interest therein (see subparagraph (3) of this paragraph), the proceeds of the policy would not be includible in his gross estate under section 2042.

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

\* \* \* \* \* \* \*

(4) A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust. Moreover, assuming the decedent created the trust, such a power may result in the inclusion in the decedent's gross estate under section 2036 or 2038 of other property transferred by the decedent to the trust if, for example, the decedent has the power to surrender the insurance policy and if the income otherwise used to pay premiums on the policy would become currently payable to a beneficiary of the trust in the event that the policy were surrendered.

(5) As an additional step in determining whether or not a decedent posessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. \* \* \*

contrary, petitioner asserts that the proceeds of the policies should be excluded from his gross estate because he had irrevocably assigned "all right, title and interests" in the policies to the Northern Trust Co., as trustee, for the sole benefit of his children and grandchildren.

The parties agree that the significant date is the date of death; that the owner of a life insurance policy may divest himself of all incidents of ownership and thereby prevent the inclusion of the insurance proceeds in his gross estate; and that includability does not depend on the assignee's lack of enjoyment but rather on incidents of ownership possessed by the insured. Thus the crucial aspect of this case is whether the decedent did or did not rid himself of all incidents of ownership in the various life insurance policies.

The first prong of respondent's attack is that the trust agreement itself was not intended as an assignment of the policies, and that the decedent agreed only to make the policies payable to the trustee while reserving all other policy rights to himself. The language of the trust agreement does not lend itself to such a narrow interpretation. It begins:

FIRST: The insured * * * hereby *assigns,* transfers and conveys to the Trustee *all* right, title, and interest of said Insured in and to said *policies and any death benefits* thereunder. [Emphasis added.]

We cannot imagine how this language could be clearer. Yet respondent ignores it in favor of subordinate language in the trust agreement whereby the decedent agrees to make the proceeds payable to the trustee, and other language indicating that the insured, rather than the trustee, will be responsible for paying the premiums. A fair reading of such language leads us to the conclusion that it was merely intended to facilitate the intended assignment. In our judgment the instrument was clearly intended as an assignment of the policies. See and compare *First National Bank of Birmingham, Ala.* v. *United States,* 358 F. 2d 625 (C.A. 5, 1966); *United States* v. *Rhode Island Hospital Trust Co.,* 355 F. 2d 7 (C.A. 1, 1966); *Farwell* v. *United States,* 243 F. 2d 373 (C.A. 7, 1957); *Estate of Powel Crosley, Jr.,* 47 T.C. 310 (1966); *Estate of Max J. Gorby,* 53 T.C. 80 (1969).

Respondent then urges that the decedent's failure to file copies of the trust agreement with the insurers is evidence that no assignment was intended. He points out that the decedent executed forms for changing beneficiaries, not notices of assignment. This is true as to the policies in issue; but as to the Mutual Benefit policy and the Massachusetts Mutual policy, which also formed a part of the trust and which are concededly not includable in the decedent's gross estate, the decedent did execute notices of assignment. This was done at the suggestion of the insurers, one of whom interpreted the trust agreement

as indicating that the insured did "not wish to reserve any rights at this time [sic]." The decedent may have been somewhat careless in informing his insurers about the purposes of the trust agreement, but we do not think his behavior evidences an intent contrary to the express language of the trust agreement.

Respondent next contends that even if an irrevocable assignment was intended, the trust agreement by itself was insufficient for that purpose. He cites Illinois law, which provides that insurance policies may be assigned "Subject to the terms of the policy or any contract relating thereto." Ill. Rev. Stats., ch. 73, sec. 857.1 (Supp. 1970). He relies upon the provisions in the various policies to the effect that no assignment shall be binding on the insurance company until a copy is filed with its home office. In the case of the group term policy, respondent relies on the provision prohibiting assignments by employees. He notes that in each case the decedent executed only a form changing the beneficiary of the policy rather than a notice of assignment.

With respect to the Union Central policy, respondent's argument fails. That policy contains no provision regarding assignment, and the policy is otherwise assignable under the Illinois statute, *supra.*

The Northwestern Mutual policy and the Fidelity Mutual policies contained provisions stating that any assignment would not "be binding upon the Company" until filed with the company. These are simply notice provisions designed to protect the insurers from dual liability to unknown assignees. In *Gray* v. *Penn Mutual Life Insurance Co. of Phila.*, 5 Ill. App. 2d 541, 126 N.E. 2d 409, 414 (1955), the court stated:

> The provision of the policy requiring notice of an assignment before it shall become binding on the insurer, is for the benefit of the insurer. Equitable Life Ins. Co. of Iowa v. Mitchell, 248 Ill. App. 401; Mutual Ben. Life Ins. Co. v. Swett, 6 Cir. 222 F. 200. The failure to give notice does not affect the force or validity as against the assignor of any contract between him and the third person as to the ultimate receipt and enjoyment of the proceeds of the policy.

See also *Gurnett* v. *Mutual Life Ins. Co.*, 356 Ill. 612, 191 N.E. 250 (1934). The cases cited by respondent, suggesting that the insurer must have notice of assignment, involve multiple assignees. Those cases are not in point here.

Respondent stresses that by failing to notify the insurers of the assignments, the insured retained an "ability to deal with the policies" contrary to his agreement with the assignee. While the insured could possibly have cashed in some of the policies or could have exercised a second assignment with notice thereof to the insurers, any such action on his part would have constituted a breach of the trust agreement and would have amounted to fraud against the bank, as assignee and trustee. "Incidents of ownership" are to be measured by a "general,

legal power to exercise ownership without regard to the owner's ability to exercise it at a particular moment." *Commissioner* v. *Estate of Noel*, 380 U.S. 678, 684 (1965). The term "ownership" connotes legal rights and powers. In this case the decedent died without the legal power or right to exercise any incidents of ownership in the policies, except the group term policy, even though he may have had the "ability" to affect the policies by his actions. According to section 20.2042-1(c) (2), Estate Tax Regs., the term "incidents of ownership" has "reference to the *right* of the insured." (Emphasis added.) The term is not limited to its "technical legal sense" only because title is not determinative.

Respondent's final argument is that "incidents of ownership" are ultimately a question of Federal law, and that although Federal law in turn looks to State law, it does so only to interpret provisions appearing on the face of the policy. Thus, even though the assignment in question may be valid under Illinois law, Federal law does not look beyond the policy, and since Bartlett never gave notice of the assignment to the insurers, respondent argues that he remained the owner. This argument derives from *Kearns* v. *United States*, 399 F. 2d 226 (Ct. Cl. 1968), where it was stated that "In light of the Supreme Court's holding in Commissioner of Internal Revenue v. Estate of Noel * * * the policy facts would appear to be controlling." See also *Cockrill* v. *O'Hara*, 302 F. Supp. 1365 (M.D. Tenn 1969). *Kearns* and *Cockrill* held that although the policies had been treated as belonging to the insureds' corporations (which paid the premiums and pledged them as collateral), the insureds possessed incidents of ownership under the policy provisions sufficient to require their inclusion in the insureds' gross estates. It does not appear that the plaintiffs in those cases argued that the insureds had been without rights in the policies under State law, but rather that they had not *intended* to reserve them. As for the *Noel* case, no question of Federal law versus State law was before the Court, and there is no admonition to look solely to the terms of the policy. The Supreme Court, like this Court, found it unnecessary to *reach* State law questions, finding that no assignment was *intended*, and even if it had been, the insured had not complied with the policy provisions. We think all of these cases are distinguishable from the instant case, where the insured not only intended to assign the policies, but under Illinois law *did in fact accomplish* his intended purpose.

We note that respondent's own regulation requires us to look to the terms of the policy and to the effect of local law upon the provisions of the policy. Sec. 20.2042-1(c) (5), Estate Tax Regs. Local law, like the assignment here in question, is commonly omitted from the face of the policy. And local law may require that external provisions be added

to the policy. Under Illinois law the assignment is made part of the policy even though it does not appear on the face of the policy. *Gray* v. *Penn Mutual Life Insurance Co. of Phila.*, *supra.*

The group term policy provides specifically that "No assignment by any employee of any insurance under this policy shall be valid." Therefore, under the terms of such policy, the decedent retained his incidents of ownership. Petitioner has cited Illinois cases which, notwithstanding a prohibitory clause, would permit assignment after proceeds have become payable. But in this case the decedent attempted an assignment before the proceeds were payable.

We disagree with petitioner's argument that to permit assignment by the many employees covered by the group policy would in no way increase the burdens of the insurer or the employer. Administrative costs, which are an important factor in group policy rates, might be affected. Moreover, under Illinois law, the parties to a contract may prohibit its assignment. *Immel* v. *Travelers Ins. Co.*, 373 Ill. 256, 26 N.E. 2d 114 (1940) ; Ill. Rev. Stats., ch. 73, sec. 857.1 (Supp. 1970). In these circumstances we think the prohibition against an employee assignment contained in the group term policy was legally effective and that the decedent's attempted assignment was void.[4]

Accordingly, we hold that, except for the group term policy, the decedent possessed no incidents of ownership at the time of his death. It therefore follows that only the proceeds of the group term policy are includable in the decedent's gross estate under section 2042(2).

To reflect the conceded issues and the conclusions reached herein,

*Decision will be entered under Rule 50.*

[4] Cf. *Landorf* v. *United States*, 408 F. 2d 461 (Ct. Cl. 1969), and *Estate of Max J. Gorby*, 53 T.C. 80 (1969), where group term insurance policies were held to be effectively assigned and not includable. In each of these cases the group policy permitted assignment and the employee filed an absolute assignment which was accepted by the insurance company.