Lois A. Cole v. Commissioner.
Cole v. Commissioner
Docket No. 2379-69.
United States Tax Court
T.C. Memo 1971-74; 1971 Tax Ct. Memo LEXIS 258; 30 T.C.M. (CCH) 308; T.C.M. (RIA) 71074; April 15, 1971, Filed. Richard H. Frank, Jr., 7th Floor, Third National Bank Bldg., Nashville, Tenn., for the petitioner. John M. Wylie, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Year
Amount
1965
$441.79
1966
383.20
1967
426.22 The only issue presented for decision is whether the payment of certain life insurance premiums by petitioner's former husband constituted alimony includable in her gross income under section 71(a). [1]
All of the facts have been stipulated. The stipulation of facts and the exhibits attached *259 thereto are incorporated herein by this reference and are adopted as our findings. To the extent deemed pertinent the facts are summarized below. 309 Lois A. Cole (herein called petitioner) is a single person who resided in Nashville, Tennessee, at the time she filed her petition herein. She filed her Federal income tax returns for 1965, 1966 and 1967 with the district director of internal revenue at Nashville, Tennessee. Petitioner married Austin Cole, Jr., in 1927. They had two children: Austin Cole, III, and Lois Ann Cole. Petitioner and her husband separated in 1955, and she was granted a divorce by the Circuit Court of Randolph County, Illinois, on December 21, 1961. Incident to their divorce, petitioner and Austin Cole, Jr., entered into an agreement dated December 21, 1961, which provided, in part, as follows: 6. (a) First Party agrees that on or before the 5th day of January, 1962, he will make Second Party the irrevocable beneficiary in the policies of life insurance upon the life of First Party described in Exhibit "A" attached hereto totaling in face value the sum of $30,000.00, and First Party agrees and warrants that at the time of the designation of the *260 Second Party as irrevocable beneficiary there will be no loans or indebtedness secured by the said policies. (b) First Party agrees that the designation of Second Party as irrevocable beneficiary in said policies of insurance shall be accompanied by such transfers or assignments as are necessary or appropriate to insure that First Party shall have no right to borrow any monies under said policies of insurance or to make any loans secured thereby. (c) First Party agrees that he will pay when due the premiums on said policies of life insurance and that he will transmit, within fifteen (15) days after the due date of said premiums, receipts showing the payment thereof to the Second Party. In the event First Party fails to make payment of any premium Second Party shall have the right to make such payment and First Party agrees to repay Second Party for all such payments made by her on demand. (d) First Party agrees that after the designation of the Second Party as irrevocable beneficiary in said insurance policies he will deliver the same to the Second Party. Prior to December 21, 1961, Austin Cole, Jr., had insured his life with the Metropolitan Life Insurance Company of New *261 York. He held a ten-year renewable term policy in the face amount of $20,000, and whole life policies in the aggregate amount of $20,000. Austin Cole, Jr., was owner of the policies, and Austin Cole, III, and Lois Ann Cole were the beneficiaries. On April 30, 1962, Austin Cole, Jr., executed a request for change of policies. In exchange for the policies which he held, he received one whole life policy in the amount of $20,000, and another in the amount of $10,000. Again the children were named as beneficiaries, but Austin Cole, Jr., reserved the right to change beneficiaries. On July 3, 1962, Austin Cole, Jr., requested a change of beneficiaries under the two policies. In accordance with his request, the beneficiaries of the policies were changed to the Estate of Austin Cole, Jr. On July 5, 1962, Austin Cole, Jr., executed an absolute assignment of the two policies. Lois Cole, petitioner herein, was named as the transferee. Prior to November 23, 1970 Austin Cole, Jr., had not delivered the policies to petitioner. Incident to the preparation of this case for trial, Austin Cole, Jr., authorized respondent to deliver the policies to petitioner. The policies were delivered to petitioner *262 during the week of November 23, 1970. Each policy provided that upon the designation of a new policy owner, any designation of beneficiary by the prior owner would become void. Upon failure by the owner to designate a beneficiary, the proceeds were payable to the owner or his estate. Each policy provided that the interest of any beneficiary who failed to survive the insured would revert to the owner of the policy, or his estate, unless otherwise specified. As a result of using the dividends to reduce the premiums on the two policies, Austin Cole, Jr., during the years in issue paid to Metropolitan Life Insurance Company the following amounts: Year
Annual Premium
Dividend
Paid by Austin Cole, Jr.
Policy No. 24-413-770-A:
1965
$ 529.40
$ 68.60
$ 460.80
1966
529.40
83.40
446.00
1967
529.40
92.20
437.20
Policy No. 626-411-028-A:
1965
$1,353.30
$114.00
$ 1,239.30
1966
1,353.30
154.40
1,198.90
1967
1,353.30
180.60
1,172.70
Austin Cole, Jr., paid premiums in total amount of $1,700.10 in 1965, $1,644.90 in 1966, and $1,609.90 in 1967. Petitioner did not report these amounts as income on her Federal income tax returns.
Respondent's *263 notice of deficiency determined that Austin Cole, Jr., paid premiums of $1,694.70 in 1965, $1,685.30 in 1966, and 310 $1,694.70 in 1967. Respondent concedes that the deficiencies, if any, for each year should be reduced by the amount of tax attributable to the difference between the premiums actually paid and the amounts used in calculating the notice of deficiency.
Petitioner reported on her 1965 Federal income tax return the receipt of $5,400 in alimony. Respondent concedes that $1,800 of the $5,400 reported is not taxable income.
Petitioner reported on her 1966 Federal income tax return the receipt of $5,400 in alimony. Respondent concedes that $600 of the $5,400 reported is not taxable income.
Petitioner reported on her 1967 Federal income tax return the receipt of $5,250 in alimony. Respondent concedes that $450 of the $5,250 reported is not taxable income.
Incident to their divorce in 1961, petitioner and her former husband entered into an agreement whereby, inter alia, he undertook: (1) to make petitioner the irrevocable beneficiary of insurance policies on his life in the amount of $30,000; (2) to make "such transfers or assignments as are necessary and appropriate *264 to insure that [husband] shall have no right to borrow any monies under said policies of insurance or to make any loans secured thereby;" (3) to pay the premiums; and (4) to deliver the policies to her.
After signing the agreement, the former husband proceeded: (1) to name their children as beneficiaries; (2) to later void that designation, and to name his estate as beneficiary; and (3) to assign the policies to petitioner. Further, he used the policy dividends to reduce the premiums, and failed to deliver the policies to petitioner until 1970.
Respondent argues (1) that the agreement to name petitioner the irrevocable beneficiary of the policies made petitioner the owner of the policies, or (2) that the agreement intended that petitioner should become the owner of the policies, and her former husband accordingly assigned the policies to her. If the agreement required that petitioner be made the owner of the policies, then the periodic payment of the premiums would be alimony includable by her in gross income.
Respondent's first argument is contrary to his published position on the issue. In Rev. Rul. 57-125, 1957-1 C.B. 27, it is stated that where the husband agreed *265 "that he would pay all premiums on such insurance, keep them in good standing, would not make any loans against them, and would not change beneficiaries, that is, that the wife would remain the first beneficiary and his two children alternate beneficiaries," it was respondent's view that "the husband did not assign the policies in such a manner as to divest himself of their ownership and control." Because he retained the right under the policies (if not the right under the agreement) to instruct the insurer with regard to the policies, he would not be allowed an alimony deduction. [2] With similar effect, but for different reasons, recent cases have held that a complete assignment of the insurance policies is required before the husband may deduct the premiums and before the wife must include them in her income as alimony. Piel v. Commissioner, 340 F. 2d 887 (C.A. 2, 1965); Hyde v. Commissioner, 301 F. 2d 279 (C.A. 2, 1962); see Stevens v. Commissioner, 439 F. 2d 69 (C.A. 2, 1971).
*266 In Piel, the Court of Appeals chronicled the development of the case law in this area. Initially, the issue was whether the policies were intended "as security for the performance of alimony obligations." The emphasis later shifted to the quantum of benefits received, with emphasis on survival clauses. 340 F. 2d at 890. More recently, that Court had insisted upon "assignment," "a complete transfer of ownership." In the Piel case it concluded that
Ownership of the policies [by the wife] is necessary to support a deduction [by the husband]. State law cannot control the quantum of benefits * * * necessary to support a deduction under Federal law of income taxation, however solicitous such State decisions may be of the rights of a beneficiary of life insurance * * *. In addition primary emphasis on the wording of a particular marital agreement will only produce a vague, over-refined and unsatisfactory line of precedent." 340 F. 2d at 890-891.
We need not go so far, in this case, as to adopt the position of the Court of Appeals for the Second Circuit. Nor, on the other hand, need we inquire as to the rights of an irrevocable beneficiary under State law, *267 or whether Illinois or Tennessee law should control. By their terms, the policies herein make the rights of any beneficiary 311 contingent upon survivorship, unless otherwise specified. Relinquishment of the right to change beneficiaries would not, under the terms of the policies, give the beneficiaries a vested right in the proceeds. Had Austin Cole, Jr., named petitioner irrevocable beneficiary of the policies, as he had agreed to do, and had petitioner predeceased him, the proceeds would have been payable to the owner-insured, Austin Cole, Jr. It has been held in numerous such cases that the contingent nature of the beneficiary's interest, and the reversionary right of the insured, precludes treatment of the premiums as alimony. See, e.g., Carl G. Ortmayer, 28 T.C. 64 (1957); Lillian Bond Smith, 21 T.C. 353 (1953); Seligmann v. Commissioner, 207 F. 2d 489 (C.A. 7, 1953).
Alternatively, respondent argues that petitioner's former husband did in fact execute an absolute assignment of the policies. Petitioner counters with the contention that in making the assignment the former husband did more than was required of him by the agreement. Any *268 voluntary payment by him would not be alimony, since it would not be "in discharge of a legal obligation." Section 71(a); Allen Hoffman, 54 T.C. 1607 (1970); Martha K. Brown, 50 T.C. 865 (1968), affirmed per curiam 415 F. 2d 310 (C.A. 4, 1969). The remaining issue, then, is whether the agreement was intended to require an assignment.
We think that a fair reading of the agreement indicates that no assignment of the policies was intended. Petitioner's former husband undertook to make "such transfers or assignments as are necessary or appropriate * * * that [husband] shall have no right to borrow * * *." This is the only reference to assignment, and it seems to contemplate less than a complete assignment of the policies. Moreover, we are unwilling to conclude that in agreeing at the outset to make petitioner merely the irrevocable beneficiary of the policies, the parties acted unwittingly, without regard to the policy provisions which made her interest a contingent one. Nor will we assume that they acted in ignorance of the tax consequences.
The evidence shows that petitioner's husband, after signing the agreement, proceeded to ignore it. Shortly *269 thereafter, he changed course and made a voluntary assignment of all rights in the policies. Since he had earlier agreed to relinquish most of the policies. benefits, this deed cost him little. Under the circumstances, we suspect that this was no gesture of penitence, nor any attempt to live up to the agreement, but merely an inexpensive and ineffective ploy for shifting the tax burden to the petitioner.
Accordingly, we conclude that the premiums paid on the two life insurance policies are not includable in petitioner's gross income as alimony.
Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Intenal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Compare Estate of Sydney E. Bartlett, 54 T.C. 1590, 1597-1598↩ (1970), where respondent also equated ownership with an "ability to deal with the policies."