ESTATE OF GORDON E. THOMPSON, JR., Deceased, L. HAYES TATE and SOUTHEASST BANKS TRUST COMPANY, N.A., Co-Personal Representatives, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Thompson v. Commissioner
Docket No. 4795-79.
United States Tax Court
T.C. Memo 1981-200; 1981 Tax Ct. Memo LEXIS 547; 41 T.C.M. (CCH) 1333; T.C.M. (RIA) 81200; April 23, 1981. *547 In 1973, decedent's wholly-owned corporation purchased a life insurance policy on decedent's life. The corporation owned the policy, paid the premium and named itself as beneficiary. In February 1975 the corporation and decedent entered into a contract. Decedent obtained the legal power, in conjunction with the corporation, to change the beneficiary of the proceeds of such policy in excess of its cash surrender value. Held, the proceeds of such policy in excess of the cash surrender value are includable in decedent's gross estate under sec. 2042(2), I.R.C. 1954, because decedent possessed an incident of ownership in the subject policy at the time of his death. Lloyd T. Asbury and James D. O'Donnell, for the petitioner. Thomas K. Purcell, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated January 16, 1979, respondent determined a deficiency of $ 112,382 in the Federal estate tax of petitioner. After concessions, the issues are: (1) whether decedent possessed any incidents of ownership in a life insurance policy on decedent's life by virtue of an alleged agreement between decedent and Gordon Thompson Chevrolet, Inc., *548 thereby warranting the inclusion of the proceeds of said policy in decedent's gross estate pursuant to section 2042(2), I.R.C. 1954, (2) alternatively, whether Gordon Thompson Chevrolet, Inc., decedent's solely owned corporation, possessed any incidents of ownership in said life insurance policy so that the proceeds, payable to decedent's irrevocable trust, should be included in decedent's gross estate pursuant to section 2042(2), and (3) alternatively, whether the proceeds of this same insurance policy must be included in decedent's gross estate because decedent divested himself of incidents of ownership in the policy in contemplation of death within the meaning of section 2035. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Gordon E. Thompson, Jr. (Thompson) died of accidental causes on April 2, 1975 at the age of 42. Petitioner is the Estate of Gordon E. Thompson, Jr. L. Hayes Tate and Southeast Banks Trust Company, N.A. are co-personal representatives of the estate with an address in Jacksonville, Florida at the time the petition herein *549 was filed. A timely Federal estate tax return was filed on behalf of petitioner with the Internal Revenue Service Center at Jacksonville, Florida. L. Hayes Tate was an insurance broker, financial consultant and business advisor to Thompson for a number of years prior to 1968 and assisted Thompson in business and financial planning. During the spring of 1968, Thompson provided written instructions to Tate for the continued operation of Gordon Thompson Chevrolet, Inc. (Corporation) in the event of his (Thompson's) death. In response to Thompson's instructions, Tate prepared written recommendations for the continuation of the dealership. The plan adopted by Thompson was to name Kenneth T. Lamb, a close personal friend who then served as vice-president and general manager of the Corporation, as nominee under a Chevrolet Dealer Sales and Service Agreement (dealer agreement). The dealer agreement required that Lamb have the financial ability to purchase a 25-percent interest in the Corporation. The funds needed to make such a purchase were to be provided by an insurance policy on the life of Thompson to be acquired by Lamb. By letter dated August 12, 1968, Tate corresponded with *550 his insurance company's home office concerning Thompson's insurance portfolio. Therein, he identified various policies in force and requested the additional insurance coverage needed to implement the above plan. The dealer agreement was in effect from November 1, 1970 through the date of death of Thompson. The dealer agreement provided that it was a personal service contract between Chevrolet Motor Division of General Motors Corporation (Chevrolet) and Thompson, as owner and dealer-operator, and that no change in ownership, financial interests or active management of the dealership could be made without the prior written approval of Chevrolet. The dealer agreement further provided that Thompson may designate a person (nominee) as a dealer-operator of a successor dealership, subject to approval by Chevrolet of such nominee's ability to meet the requirements set forth in the dealer agreement. Additionally, the dealer agreement provided that Thompson may designate a prospective heir to participate financially in such successor dealership, subject to Chevrolet's approval. Pursuant to the original plan, Lamb was named nominee on November 1, 1970. Lamb underwent an operation for *551 cancer in October, 1973. Despite the favorable prognosis at that time, the Corporation soon thereafter applied for an insurance policy on Thompson's life. The intended purpose of this additional insurance was to protect the business in the event Lamb's illness did not abate. On December 21, 1973, in response to the Corporation's application, The Fidelity Mutual Life Insurance Company issued Policy No. 1070906 (policy) on the life of Gordon E. Thompson, Jr., to Gordon Thompson Chevrolet, Inc., in the face amount of $ 400,000. The policy was a whole life policy with an annual premium of $ 10,852. The Corporation owned the policy and paid the premiums. The initial beneficiary of the policy was to be the Corporation. However, on December 27, 1973 the beneficiary was changed to the Estate of Gordon E. Thompson, Jr. On February 8, 1974 the designated beneficiary was changed back to the Corporation. The policy provided that all rights available thereunder were vested in the owner (the Corporation) and were exercisable without the consent of anyone else. These rights included the rights to obtain premium loans to the extent of the then loan value of the policy, and policy loans to *552 the extent of the then cash value of the policy. In addition, dividends were applied to the purchase of participating paid-up additions to the face amount of the policy; the cash value related to these paid-up additions could be withdrawn by the owner. However, the policy provided that, at the written request of the owner, dividends could be withdrawn in cash, applied toward the payment of a policy premium or left to accumulate to the credit of the policy with interest compounded annually at a rate determined by the insurance company. Further, the policy contained the following miscellaneous provisions: MISCELLANEOUS PROVISIONS Change of Beneficiary.--Before this policy matures by death or as an endowment, and subject to the rights of any assignee, the owner may change from time to time any beneficiary designation, unless the owner and the Company agree otherwise. Every change must be made in writing on a form satisfactory to the Company. No change will be effective until the written request has been received by the Company at its Home Office. When the request has been received it will be deemed effective as of the date it was signed whether or not the insured is living when it *553 is received at the Home Office of the Company. Any payment made by the Company before receipt of the request at its Home Office shall be made without prejudice to it. Assignment.--No assignment shall be binding upon the Company until the original or a duplicate is received at its Home Office. The Company assumes no obligation as to the effect, sufficiency, or validity of any assignment. All assignments will be subject to any indebtedness to the Company on this policy. To the extent permitted by law, the rights of any revocable beneficiary will be subordinate to the rights of any assignee of record with the Company, whether the assignment was made before or after the date of the beneficiary designation, but without prejudice to the Company as to any payment made before the filing of the assignment with the Company at its Home Office. CHANGE OF PLAN While to premium is in default, this policy may be exchanged, without evidence of insurability, for another with the same Face Amount and underwriting classification. The new policy may be on any level premium Life or Endowment plan issued by the Company at the Date of Issue of this policy. * * * Lamb underwent another operation for *554 cancer in 1974 and his condition was diagnosed as terminal. Despite the apparent necessity to make adjustments to the nominee designation in the dealer agreement, Thompson did not wish to make any changes until such time as Lamb died or became totally incapacitated. In January 1975, Lamb was hospitalized and was comatose from that time until his death on March 3, 1975. During the hospitalization of Lamb, Thompson decided to make changes necessary to insure the survival of the Corporation pursuant to the initial plan established in 1968. At this time Thompson had only his children, Gordon E. Thompson III and Elizabeth Ross Thompson, then minors, as heirs through whom to provide continuity of business ownership. Therefore, on February 17, 1975 Thompson executed and transmitted a request to Chevrolet to change the nominee named in the dealer agreement from Lamb to Jerry T. Hamm. Hamm, currently president of the Corporation, has been employed by the Corporation for approximately 25 years during which period he has served in the capacity of office manager, business manager, vice president, director and secretary-treasurer. As of February 19, 1975 the dealer agreement reflected the *555 change of nominee to Hamm and further reflected a designation providing Thompson's children, Gordon E. Thompson III and Elizabeth Ross Thompson, an opportunity for financial participation in a successor dealership. On February 17, 1975 the Corporation through Thompson, president, and Jerry T. Hamm, secretary, adopted resolution concerning the policy issued by The Fidelity Mutual Life Insurance Company. The resolution read in its entirety as follows: RESOLUTION Mr. Gordon E. Thompson, Jr. of Gordon Thompson Chevrolet, Inc. has faithfully and diligently served this Company for many years.
The Company recognizes that Mr. Thompson presently has need for life insurance protection and that it may be beyond his ability to pay the full premium cost. To promote even greater loyalties and to further induce Mr. Thompson to remain in the Company's employ, it is deemed advisable for the Company to enter into a "Split-Dollar" plan of life insurance on his life. NOW, THEREFORE, BE IT RESOLVED: That Gordon E. Thompson, Jr., president of the Company is insured under policy #1 070 906 issued by The Fidelity Mutual Life Insurance Company in the face amount of $ 400,000. on the "Split-Dollar" plan *556 with Gordon Thompson Chevrolet Inc. designated as owner; that Gordon E. Thompson, Jr., president of the Company is authorized to enter into an agreement with Gordon Thompson Chevrolet, Inc. to continue said policy in force under the following plan: 1. Gordon Thompson Chevrolet, Inc. will pay the entire premium for the first and subsequent policy years. 2. Dividends on the policy will purchase additional paid up life insurance. 3. The death benefit payable under the policy will be dividend [sic] as follows: (a) An amount equal to the total cash surrender value including the value of any paid up additions shall be paid to the company, and (b) the balance of the death benefit shall be paid to the beneficiary or beneficiaries designated by Mr. Thompson. This corporate resolution was the result of much work, thought, design and consultation between Thompson, Hamm and Tate, the corporate insurance consultant. Again, on February 17, 1975 an Irrevocable Trust Agreement (Trust) was executed between Thompson, as grantor, and Hamm, Tate and The Atlantic National Bank of Jacksonville, as co-trustees. The pertinent trust language follows: IRREVOCABLE TRUST AGREEMENT
WITNESSETH: WHEREAS, *557 a corporation owned and controlled by the Grantor, Gordon Thompson Chevrolet, Inc., is the owner of certain policies of "split-dollar" insurance upon the Grantor's life and he desires at this time to cause said corporation to divest itself of its beneficial rights in and to the amounts of said policies which exceed their cash surrender value, by having it give the same in trust to said Trustees, and WHEREAS, the beneficial interests in the policies comprising the corpus of this trust are those as particularly listed and described on Schedule A hereof, and NOW THEREFORE, in consideration of the sum of TEN DOLLARS ($ 10.00) and other good and valuable consideration, it is agreed between the Grantor and Trustees as follows: ARTICLE I
The duty and responsibility concerning the payment of premiums and other charges on the insurance policies listed on Schedule "A" shall rest solely upon Gordon Thompson Chevrolet Inc. and the Trustees shall be under no obligation whatever with respect to said policies during the lifetime of the Grantor. * * * Schedule A was not introduced into evidence by the parties. In furtherance of the purposes expressed in the resolution, Tate prepared and transmitted *558 a request to The Fidelity Mutual Life Insurance Company to change the policy to provide for a split-dollar plan of distribution. The request, dated February 24, 1975, stated in part that-- * * * The death proceeds of the policy are to be divided into two parts: Part I - Gordon Thompson Chevrolet, Inc., a Delaware Corporation, its successors or assigns, to receive a death benefit equal to the total cash surrender value of the policy including the cash value of any paid up additions immediately prior to the death of the insured. Part II - Jerry T. Hamm, L. Hayes Tate and The Atlantic National Bank of Jacksonville, trustees under Irrevocable Trust Agreement dated February 17, 1975, to receive the balance of the death proceeds. Will you please prepare a table designation to accomplish the following: The trust agreement creates an irrevocable trust so the insured should have no power to change the beneficiary. I am sending you copies of the Corporate Resolution and Trust Agreement for your records. On March 31, 1975 Hamm, in his capacity as secretary-treasurer of the Corporation, executed and filed with the insurance company a "Designation of Beneficiary & Mode of Settlement" form which *559 was in conformity with the February 24, 1975 request. The designation also provided that the "owner of the policy may change this Designation" and that a future change of beneficiary under the policy would terminate a prior designation. Petitioner did not include the life insurance proceeds of $ 399,956 (proceeds) payable to the Trust in its computation of gross estate on the Federal estate tax return. In the statutory notice of deficiency, respondent determined that such proceeds are includable in petitioner's gross estate pursuant to section 2042(2) or section 2035. OPINION The first issue for our consideration is whether Thompson, at the time of his death, possessed any incidents of ownership in the policy. If so, the proceeds of the policy, although payable to the Trust, must be included in Thompson's gross estate pursuant to section 2042(2). Respondent contends that Thompson, at the time of his death, possessed a right to cause the Corporation to name the beneficiary of the policy proceeds in excess of its cash surrender value.This right allegedly was created pursuant to an agreement between Thompson and the Corporation as evidenced by a corporate resolution dated February *560 17, 1975. In furtherance of his argument, respondent points out that a power to change the beneficiary of a life insurance policy is an incident of ownership therein. Section 20.2042-1 (c)(2), Estate Tax Regs.Accordingly, respondent concludes that Thompson possessed an incident of ownership in the policy; therefore, the proceeds of such policy which were payable to Thompson's named beneficiary, the Trust, should be included in his gross estate pursuant to section 2042(2). Petitioner, as could be expected, argues that Thompson successfully divested himself of any incidents of ownership in the subject policy. Petitioner contends that the intent and understanding of all parties involved was "that the designation of the irrevocable trust as beneficiary was irrevocable and that neither the Corporation nor the decedent had any legal power to change such designation as beneficiary." Petitioner reasons that Thompson did not have the legal power to change the beneficiary designation. He possessed no incidents of ownership in the subject policy. Therefore respondent's determination that the insurance proceeds payable to the Trust are includable in Thompson's gross estate is erroneous. Section 2042(2) *561 requires the proceeds of life insurance on a decedent's life to be included in the decedent's gross estate if the decedent possessed at the time of his death any incidents of ownership in the policy, exercisable either alone or in conjunction with another person. Section 20.2042-1(c)(2), Estate Tax Regs., elaborates on the meaning of the term "incidents of ownership":
§ 20.2042-1 Proceeds of life insurance-- (c) Receivable by other beneficiaries. * * * (2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * * The word "power" as used in this regulation refers to a legal power to exercise an incident of ownership. See Commissioner v. Estate of Noel, 380 U.S. 678, 684 (1965); Estate of Bartlett v. Commissioner, 54 T.C. 1590, 1597-1598 (1970). *562 A determination of whether or not decedent possessed such legal power ultimately turns on an analysis of the facts in light of applicable state law. [1]
In most cases, the provisions of the insurance policy ("policy facts") shall govern the relationships between the insured, the insurer, the owner and the beneficiary(ies). See United States v. Rhode Island Hospital Trust Company, 355 F.2d 7, 12-13 (1st Cir. 1966), and the cases cited therein. Only in rare circumstancs will evidence to the effect that "policy facts" do not conform to the intent of the parties thereunder ("intent facts") overcome the heavy presumption in favor of "policy facts." United States v. Rhode IslandHospital Trust Company, supra at 12-13. However, the legal relationships established by the policy may be altered by an extrinsic, enforceable contract executed by those parties who have contractable rights in the policy. [2] However, such extrinsic contract will not be respected for tax purposes unless (1) the existence and provisions of that contract overcome the heavy predominance of policy fact and (2) the contract is valid and enforceable under applicable state law. *563 [3] *564 Apparently petitioner attacks respondent's determination based on three separate grounds: (1) that the corporate resolution is a contract allowing only Thompson to designate irrevocably a beneficiary, (2) that the beneficiary designation filed with the insurance company was intended to be an irrevocable designation, and (3) that based on an examination of the entire record, the named beneficiary, an irrevocable trust, was a third-party beneficiary to the contract *565 between the Corporation and Thompson. Therefore, petitioner reasons that Thompson did not have the legal power to exercise the requisite incident of ownership at the time of his death. With respect to the first ground, petitioner and respondent agree that the corporate resolution of February 17, 1975 evidences a valid contract between the Corpoation and Thompson. This contract bestowed on Thompson the right to designate the beneficiary or beneficiaries of the proceeds of the subject policy in excess of the total cash surrender value. It is undeniable that the right to change a beneficiary is an incident of ownership. Section 20.2042-1 (c)(2), Estate Tax Regs. The uncertainty surrounding this contract results from petitioner's contention that Thompson's rights under the contract extended to only a one-shot irrevocable beneficiary designation. In support of this contention petitioner states that the "irrevocable designation is clearly shown by the resolution itself, the simultaneous execution and acceptance of an irrevocable trust designated as beneficiary, the change of beneficiary notice sent to Fidelity Mutual on February 24, 1975 and oral testimony by Mr. Jerry Hamm." We are *566 not convinced by petitioner's interpretation of the facts. It is petitioner's burden to establish that the beneficiary designation was irrevocable. The resolution is silent with respect to the revocability or irrevocability of Thompson's permitted designation. Petitioner attempts to satisfy its burden of proof by focusing on testimony and facts which we find vague, unconvincing and of low probative value. For example, Tate's February 24, 1975 notice to the insurance company regarding the split-dollar plan of distribution contained the following statement: The trust agreement creates an irrevocable trust so the insured should have no power to change the beneficiary. I am sending you copies of the Corporate Resolution and Trust Agreement for your records. We note that the insured never had the power to change the beneficiary under the insurance policy as he was not the owner. What the statement seems to imply is that Thompson's inability to designate a later beneficiary flows directly from the fact that the beneficiary was an irrevocable trust. This is a question of enforceability under applicable state law which we shall examine in the latter part of this opinion. Be that as it *567 may, we do not consider this statement to be an instruction to the insurance company to make the beneficiary designation irrevocable. Further, we do not consider such statement to evidence in intent by the Corporation to give Thompson only "one bit at the apple." We are told that Tate was an insurance, financial and business advisor to Thompson and the Corporation for a number of years. We also know that the corporate resolution was the result of much work, thought and design by Thompson, Hamm and Tate. Further, Hamm testified that the intent of all the parties involved was that the beneficiary designation was irrevocable. Had this been the intention of the parties, surely such intent would have clearly manifested itself either in the corporate resolution or in the beneficiary designation transmitted to the insurance company. We are uncertain whether the vague nature of the entire transaction was intentional or not. However, there can be little doubt that the various individuals involved, especially Tate, were apprised of the differences in gift and estate tax consequences resulting from an irrevocable as opposed to a revocable beneficiary designation. The nonspecific language *568 in the contract created the opportunity to argue revocability or irrevocability interchangeably. We cannot and will not allow "vagueness" to be a vehicle for posthoc tax planning. Accordingly, we find that petitioner has not established that the contract between Thompson and the Corporation provided for an irrevocable beneficiary designation. For the same reasons as expressed above, we also find that the beneficiary designation itself was revocable and therefore we reject petitioner's second ground. We hold that Thompson at the time of his death had the legal power pursuant to the resolution contract to cause the Corporation to name the beneficiary of his choice. We next must consider petitioner's final argument that the irrevocable trust was a third-party beneficiary which could deprive Thompson of legally exercising his right to change the beneficiary under the contract. This question ultimately turns on an analysis of the facts in light of applicable state law. Estate of Bartlett v. Commissioner, supra at 1598; Morton v. United States, 457 F.2d 750, 753 (4th Cir. 1972). Petitioner does not direct us to applicable Florida law but instead relies on the Fourth Circuit's opinion *569 in Morton. However, Morton is distinguishable from the instant case. In Morton "the decedent executed an endorsement of the policy effecting an irrevocable designation of beneficiaries," 457 F.2d at 752. Thus, in Morton, it was clear that an irrevocable designation of beneficiary was made by the decedent. In the instant case, we have found that the beneficiary designation was revocable. The Supreme Court of Florida has established the following principles with respect to insurance policies and the right to change beneficiaries: [1] This court is committed to a strict interpretation of policy requirements for change in beneficiaries in life insurance policies of this kind. Sheppard v. Crowley, 61 Fla. 735, 55 So. 841; Warren v. Prudential Insurance Company of America, 138 Fla. 443, 189 So. 412. * * * The privilege given to the assured to change the beneficiary of his policy is in the nature of a power created by his contract with the company to be exercised by him only in strict accordance with the terms of the instrument creating it. Opitz v. Karel, 118 Wis. 527, 95 N.W. 948, 62 L.R.A. 982, 99 Am.St.Rep. 1004. Upon a valid gift of such policy having been made, absolute title and *570 ownership vests in the donee; and thereafter the donor has no power or control over it. A beneficiary has no such present interest in the policy. His is only an inchoate right to the proceeds, subject to be divested at any time during the lifetime of assured, by transfer, assignment, or change of beneficiary. Miller v. Gulf Life Ins. Co., 152 Fla. 221, 12 So. 2d 127, 129-130 (1943). In the instant case, the subject policy provided that the owner of the policy may change the beneficiary only by written request in a form satisfactory to the insurance company. Certainly the Corporation complied with the terms of this policy when it executed the subject beneficiary designation. However, as we previously stated, neither the resolution nor the designation were proven to provide for irrevocability. Finally, there is no convincing evidence that the insurance company considered the beneficiary designation to be irrevocable. Therefore, given that Florida requires a "strict interpretation" of policy terms, we hold that the irrevocable trust had only an "inchoate right" or expectancy interest in the proceeds subject to divestiture upon a change of beneficiary. In sum, Thompson, at the time *571 of his death, had the legal power, pursuant to the contract/resolution, to change the beneficiary of the subject policy in conjunction with the Corporation. Thompson had the legal power to divest the irrevocable trust of its expectancy interest in the proceeds by designating a different beneficiary pursuant to his contract rights. Therefore, Thompson possessed an incident of ownership in the subject policy at the time of his death. Accordingly, we hold that the proceeds of such policy in excess of the cash surrender value are includable in Thompson's gross estate under section 2042(2). As a result of the above conclusion, we need not consider respondent's other theories. Decision will be entered for the respondent. Footnotes
1. Watson v. Commissioner, T.C. Memo. 1977-268↩.
2. Estate of Bartlett v. Commissioner, 54 T.C. 1590, 1597 (1970). In Bartlett, respondent argued that the insured had the ability, pursuant to the provisions of a life insurance policy, to act in contravention of a trust agreement executed by the decedent and a bank as trustee. This Court recognized that, while the insured had the ability to act in contravention of the trust agreement, any such action would have "constituted a breach of the trust agreement and would have amounted to fraud against the bank, as * * * trustee." Therefore, we concluded that, although the decedent had the ability to affect the policies by his actions, he did not have the "legal power to act" within the meaning of Commissioner v. Estate of Noel, 380 U.S. 678, 684↩ (1965). 3. We share the concerns of the First Circuit in United Statesv. Rhode Island Hospital Trust Company, 355 F.2d 7, 13 (1st Cir. 1966), when they stated: While decisions against the estate of a passive but power-possessing decedent may often conflict with the honest intentions and understanding of premium-paying beneficiaries and insureds, the alternative of abandoning the insistence on the governing nature of the contract, in most cases, is less desirable. The drawing of a useful line would be impossible; there would be a much wider range of varying decisions on similar facts; and there would be an invitation to unprincipled estate manipulation. As government counsel has pointed out, there could always be a formally executed side agreement under which the insured clearly surrenders to the beneficiary all his rights to the policy, such agreement to be brought to light only in the event of the decedent's dying before the beneficiary. For the same reasons that "intent facts" rarely predominate over "policy facts," extrinsic contracts and the provisions thereunder will be respected for tax purposes only if established by a heavy predominance of the evidence.↩